## KIRK v. UNION GRADED SCHOOL DIST. NO. 1, SEQUOYAH COUNTY.

No. 27057.   May 11, 1937.

Rehearing Denied June 8, 1937.

W. L. Curtis, for plaintiff in error.

Wall & Green, for defendant in error.

PHELPS, J. This was an action to enjoin the defendant from removing a building from the school grounds of the plaintiff school district. The plaintiff prevailed and the defendant appeals.

The defendant had been employed as a teacher by the plaintiff school district. Apparently he wanted a building on the school grounds wherein the pupils could play basket ball and other games. He drew up a contract, which was thereafter signed by two of the three school board members. According to the undisputed testimony of the plaintiff, the school board was in session when the members thereof voted to enter into the contract, but it was not signed at the meeting. The defendant himself drew up the written agreement 'and took it to the homes of the two members, who there signed it. No bids were required or obtained from others for the building thereof.

This is the agreement:

"Roland, Oklahoma
"Oct. 7, 1930

"Know All Men by the— Presents:

"Sch. Dist. U. G. No. 1 party of first part and S. E. Kirk party of second part.

"This contract entered this 7 day of Oct. 1930 party of first part, Sch. Dist. U. G. No. 1 agree that S. E. Kirk, party of second part builds a house on school ground of said U. G. No. 1, to be used for school purposes 'and games, said building to be S. E. Kirk's party of second part until cost shall be returned to him.

"Entered by party of first part and party of second part this Oct. 7, 1930.

"Frank Howell, Director
"J. K. Carr, Clerk."
"S. E. Kirk."

From the briefs it is apparent that the main ground upon which the judgment was based was that there was no estimate made and approved for the payment of the costs of said building.

In this connection section 26 of art. 10 of the Constitution is urged by the plaintiff, who prevailed in the trial, as forbidding and making void the contract in question. That section forbids the school district from becoming indebted in any amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof. The plaintiff also cites Board of Com'rs of McCurtain County v. Western Bank & Supply Co., 122 Okla. 244, 254 P. 741, wherein it was held that a supply company furnishing materials for the building or furnishing of a courthouse, in excess of the appropriation, could not recover the amount of the debt, nor, in the alternative, the supplies furnished by it.

As we see it, neither the constitutional provision nor the cited case is in point here. Some debt must be attempted to be created before the constitutional provision can be said to apply. The most that could be said in this connection is that the instrument is an option to purchase. The school district thereby permitted the defendant to build a house on the school grounds, to be used for school purposes

and games, said building to belong to the defendant "until cost shall be returned to him." The instrument did not create any obligation of the school district to return the costs of construction to the defendant. Instead of paying the defendant for the building, it was to belong to the defendant until the school district should pay him his expenses in constructing it. There was no promise by those representing the school district that they would ever assume the indebtedness. Therefore the instrument did not create or attempt to create a debt, nor did it promise to ever assume any debt.

Another asserted justification for the judgment is that the contract is void because it was entered into by the two members of the school board as individuals and not as a board, —citing School District v. Shelton, 26 Okla. 229, 109 P. 67, to the effect that acts and declarations of individual members of a school board, independent and apart, as distinguished from actions by the members as a board in its capacity as such, will not create an enforceable contract. According to the testimony by the plaintiff, which, as stated above, was not disputed, the board was in session as a board when it voted to enter into the contract. Whether, having taken such official action, the contract need be signed in open board meeting need not be decided here. The evidence reveals a consistent and unvarying course of conduct over a period of four or five years following the erection of the building, whereunder it was recognized as being the property of the defendant. We think it cannot be doubted that the agreement was in effect ratified by the board, and probably by all of the persons residing in the district. The question of the status of the building, and of the fact that it was defendant's property, was never doubted. Repeatedly at regular meetings of the board, according to the testimony of board members themselves, it was admitted that the defendant owned the building. As one illustration of this fact, it appears that the board desired that the janitor should collect admissions to the building, when basket ball games were being played, apparently so that some check could be kept upon the amount of receipts, probably later to be applied upon the cost of the building, and one of the board members testified that "We had a board meeting and decided in 1933 and asked Mr. Kirk (defendant) to have Bob Carr, who was the janitor, to get the gate receipts." Several times they "asked" Mr Kirk to "permit" the janitor to take the receipts. Mr. Kirk was always in charge. These instances, and a number of other circumstances and events, clearly illustrate the fact that the board, both within and without its meetings, permitted themselves and Kirk to retain the impression that the building was his, as per the written memorandum. This was but natural, due to the fact that, acting in reliance upon the memorandum, Mr. Kirk had spent $500 or more in the erection of the building. Furthermore, it is contended throughout the brief of the plaintiff that Kirk, the defendant, was holding the building "over the heads of the school district" in order to compel the district to re-elect him each year. The record does not bear out this contention, but the contention does serve as an admission that at all times all parties treated the building as belonging to the defendant. According to the principles of natural justice and equity, the defendant should have his building, which he built and paid for, unless it is forbidden by some applicable rule of law.

When a person attaches his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it. Section 11730, O. S. 1931. But if there is an agreement permitting him to remove it, then it belongs to him, and does not belong to the owner of the land. There was no agreement expressly permitting the defendant to remove the building. If, then, we construe the statute strictly, the defendant may not remove the building though it belongs to him, —which is a peculiar result. We think a more liberal view, and one which is more consonant with justice and reason, is that the right of removal should be considered in this particular case as included within the right of ownership. As we view it, there can be no doubt that the parties at all times treated the building as belonging to the defendant. A sense of fair dealing demands that he be permitted to remove it. A Delco system was installed in the building by the school district, but it is not shown that the system might not be removed and used elsewhere with profit or benefit to the school district. This is a comparatively minor detail.

Viewed all around, we think the equities of this case are with the defendant, and we are not of the opinion that the constitutional or statutory requirements hereinbefore considered preclude his right of re-

moval. Accordingly, in the interests of justice, we conclude that the judgment should be reversed and the cause remanded, with instructions to enter judgment for the defendant. It is so ordered.

BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.