OLIVER S. REVELL ESTATE et al.
v. HERRON et al.

No. 29609. Sept. 10, 1940.

*105 P. 2d 426.*

A. L. Brook and Eck E. Brook, both of Muskogee, for plaintiffs in error.

L. W. Randolph, of Muskogee, for defendants in error.

DANNER, J. The plaintiffs own a 40-acre tract of land. Surrounding it on the west, north, and east sides is a 200-acre tract formerly owned by Joseph Herron. For many years an old fence had marked what was supposed to be the north boundary of plaintiffs' 40-acre tract. The Herron land was cleared and cultivated down to the fence line, and the land to the south, belonging to plaintiffs, had never been cleared.

About four years prior to the commencement of this action Joseph Herron moved a small two-room box house, then situated on the northwest portion of his tract, to a point just north of the fence which divided his land from plaintiffs' land. So far as was known at that time, by Herron or by the plaintiffs, the new location was on the Herron property. Hence there was no occasion for any objection by the plaintiffs, and they made no objection. Nor did they, however, actually join or co-operate in any overt act in the placement of the house in its new location.

In 1938, after the small house had been on said location for about four years, the plaintiffs had a surveyor run the north line of their 40-acre tract, and it was then discovered for the first time that the true line between the two tracts was slightly north of the old fence line and that the little house had in fact, according to the true boundary, been moved onto plaintiffs' land.

In the meantime, and while the house was thus located, Joseph Herron had

lost title to the 200-acre tract, to one Chapman, through a mortgage foreclosure. The date of the mortgage is not shown. The defendants are lessees under Chapman.

Shortly after the correct line was thus established the defendants moved the house to the north, off plaintiffs' land and onto that of Chapman. It is undisputed that in originally moving the house Herron acted in good faith, in the belief that the south line of his property was marked by the old fence, and that he did not know that he had placed the building on plaintiffs' land until the survey of 1938 was made.

The plaintiffs filed this action in replevin, to recover possession of the house. The trial court held for the defendants, and the plaintiffs appeal.

The main contention is that when Joseph Herron moved the house onto land which was in fact owned by the plaintiffs, it became a part of plaintiffs' realty, even though it was placed there by mistake. In this connection the plaintiffs rely upon section 11730, O. S. 1931, 60 Okla. St. Ann. § 334. That portion of the section stressed by plaintiffs, and the only portion thereof which could have any bearing on this case, reads:

"When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it."

Study of the texts and the cases reveals that the courts frequently find an implied agreement in cases of this kind, where an honest mistake has been made and where the person onto whose land the building was moved apparently acquiesced, either by joining in the act of moving or by silence and inaction for a considerable period. We believe that the inference of an implied agreement is not unreasonable in such cases, and that it is consonant with justice. Consider the present case, in the light of that doctrine: The old fence had been recognized by all parties as the true boundary for years. Furthermore, Herron's cultivating his land down to the fence, and the plaintiffs' leaving theirs uncleared to the fence, and raising no question about the matter, are further indications that all parties at all times considered the fence the true boundary. The small house remained in its new location for approximately four years and still no question was raised, and apparently there was never any doubt on anyone's part as to the true boundary until the survey of 1938 was made. Under those circumstances we think it would be an unnecessarily strict and technical application of the statute if we should hold that the plaintiffs thereby acquired title to the house.

We are not without precedent in so holding. It must be recognized that one may acquiesce by inaction raising an implication as well as by overt acts or express words. In Karpik v. Robinson, 171 Minn. 318, 214 N. W. 59, a somewhat similar situation existed. In that case, however, there was an actual participation by the party on whose land the house was built. The only effect of said participation would be to evidence agreement of the party. If the agreement may be implied by circumstances, the result is the same. We quote from that case:

"Plaintiff and defendant own adjoining 40's in a cut-over section in St. Louis county. Plaintiff's land is on the west and defendant's on the east of the common boundary line. The testimony for plaintiff is that he built the log house in question, supposedly on his land, but as close as convenient to his east line. Through mistake, the line between the two forties was located by plaintiff so far to the east of its true location that he built his house on the wrong side, getting it wholly on defendant's land.

"The house was erected as a dwelling place for plaintiff and his family. There can be no question either of his mistake or his good faith. The line supposed to be the boundary was blazed. In the mistake concerning it, one Rudolph, a vendee of defendant then in possession of his 40, participated. Plaintiff testi-

fies that Rudolph showed him the corner post, evidently misplaced. For the purpose of this case, Rudolph must be considered an owner in possession. 'One who makes improvements on another's land through a bona fide mistake as to boundary or location, after due diligence to ascertain it, acts in good faith and is entitled to compensation for such improvements,' where the mistake is due to the acts or declarations of the adjoining owner. 31 C.J. 322. In Merchants' National Bank v. Stanton, 55 Minn. 211, 219, 56 N.W. 821, 822 (43 Am. St. Rep. 491), the conclusion was reached that:

" 'Where the erections are made by one having no estate in the land, and hence no interest in enhancing its value, by the permission or license of the owner, an agreement that the structure shall remain the property of the person making them will be implied, in the absence of any other facts or circumstances tending to show a different intention.'

"In the instant case there is certainly no circumstance indicating a contrary intention, and there is ample basis for the implication that plaintiff's house was erected under license from defendant's vendee. There being no equity in defendant's favor, the case is one where if it were necessary the agreement might be implied by law in order to prevent the unjust enrichment of defendant at the expense of plaintiff."

Again, in Lowenberg v. Bernd, 47 Mo. 297, the same result was reached. There the court said:

"The plaintiff claims to be the owner of land upon which was situate a log house, which defendant removed, and this action is brought for the damage suffered. The controversy arose from a disputed boundary line, each party claiming that the house was situate upon his own land. The bill of exceptions is very defective in its exhibit of evidence, and it does not certainly appear that it was taken and signed at the trial term. But, waiving this, on looking into the case I find the claim of the plaintiff to be altogether inequitable. Purchasers of adjoining land are divided by what each considers the true line of division. One of them, with the knowledge of and without objection from the other, builds a house, and subsequent purchasers recognize the same line. A survey, however, so changes this line as to throw the house upon the adjoining land, whereupon its owner moves it back within the last line. His neighbor, who had hitherto supposed the house belonged to its purchaser and occupant, and whose vendor had consented to its being built, commences suit for trespass. I care not whether the declarations of law in relation to the division line were technically correct or not. Admitting all that plaintiff claims, there was a license to build the house by the then owner of the land upon which it is claimed to have been built. It was recognized as the property of the builder and his assigns down to the running of the new line, and as soon as the license could be considered as withdrawn the owner removed the building, as he had a right to do."

It is observed that the consent in the above case was implied on the same ground that the trial court herein implied it, namely, the failure to object, and apparent acquiescence, on the part of the party onto whose land the house was moved.

This court has not heretofore construed the cited statute so strictly or technically, or extended it so far, as plaintiffs seem to desire. In Kirk v. Union Graded School District No. 1, 180 Okla. 199, 68 P. 2d 769, the building involved in the case was conceded to belong to the defendant, yet it was contended that since there was no agreement expressly permitting the defendant to remove it, he should be enjoined from removing it. We held against that contention, and said:

"When a person attaches his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it. Section 11730, O. S. 1931 (60 Okla. St. Ann. § 334). But, if there is an agreement permitting him to remove it, then it belongs to him, and does not belong to the owner of the land. There was no agreement expressly permitting the defendant to remove the building. If then we construe the statute strictly, the defendant may not remove the building though it belongs to him—which is a

peculiar result. We think a more liberal view and one which is more consonant with justice and reason is that the right of removal should be considered in this particular case as included within the right of ownership. As we view it, there can be no doubt that the parties at all times treated the building as belonging to the defendant. A sense of fair dealing demands that he be permitted to remove it. * * *

"Viewed all around, we think the equities of this case are with the defendants, and we are not of the opinion that the constitutional or statutory requirements hereinbefore considered preclude his right of removal."

The foregoing seems to be in line with the modern trend of authority. See 22 Am. Jur. 716, 717, 718, 720. It is well settled that the intention of the parties need not be expressed in words, but may be implied. Kay County Gas Co. v. Bryant, 135 Okla. 135, 276 P. 218; Mortgage Bond Co. v. Stephens, 181 Okla. 419, 74 P. 2d 361; 22 Am. Jur. 720; Guthrie v. McMurren, 167 Iowa, 154, 149 N.W. 71, L.R.A. 1915B, 187; Frost v. Schinkel, 121 Neb. 784, 238 N. W. 659, 77 A.L.R. 1381; Dippold v. Cathlamet Timber Co., 98 Ore. 183, 193 P. 909.

In Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, 514, we said that acquiescence may be quiescence under such circumstances that assent may reasonably be inferred from it. In view of the circumstances hereinbefore related, we are of the opinion that the trial court was justified in inferring acquiescence by the plaintiffs, in the placing and leaving of the house for four years in the location from which it was subsequently moved by defendants. Indeed, it would be difficult to arrive at any other conclusion, due to the fact that at that time the old fence line appears to have been accepted by all parties as the true boundary. If at this point it be argued that acquiescence in the moving of the house onto plaintiffs' land would be a different acquiescence from that of consenting to its removal therefrom, it should be remembered that the former is all that is required under the rule governing such cases, as hereinbefore demonstrated.

The only other contention of plaintiffs which need be treated is their argument that since the defendants do not own the house, but are only lessees or tenants, they should not be permitted to defend in this action. It might be questioned whether the plaintiffs, having sued the defendants, are in position to urge that the defendants should not be permitted to defend at all. However, passing over the possibilities of that question, it is observed that the plaintiff in a replevin action must recover, if at all, on the strength of his own title or possession and not on the weakness of his adversary's title or right of possession. Robb v. Dobrinski, 14 Okla. 563, 78 P. 101.

As a part of this same proposition the plaintiffs point out that Chapman, defendants' landlord, who is the present owner of the property, obtained title by foreclosure of a mortgage from Herron, the man who moved the house onto plaintiffs' property. Plaintiffs argue that if said mortgage was executed after the house was moved off Herron's land and onto plaintiffs' land, then the mortgage did not cover the house and that neither Chapman nor the defendants could claim any interest therein. Plaintiffs say that there is no evidence or testimony to show whether the mortgage was executed before or after the house was moved. It must be remembered, however, that the burden was upon plaintiffs to establish their case, and that, assuming without deciding that the date of the mortgage might make some difference, still, if it did make a difference, the burden was plaintiffs' to show that it was executed after the removal of the house. There being no evidence thereon one way or the other, we need not consider the question further.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, HURST, and DAVISON, JJ., concur. CORN and GIBSON, JJ., absent.