MID–STATE HOMES, INC., and Jim Walter Corporation, both Florida corporations, Plaintiffs-in-Error,

v.

Leora Matthews MARTIN, Defendant-in-Error.

No. 42267.

Court of Appeals of Oklahoma, Division No. 80.

Dec. 30, 1969.

Farmer, Woolsey, Flippo & Bailey, by Lawrence Johnson, Tulsa, for plaintiffs in error.

Patrick & Patrick, by Clyde T. Patrick, Sapulpa, for defendant in error.

DAVISON, Presiding Judge.

This is an appeal by Jim Walter Corporation and Mid-State Homes, Inc. (plaintiffs below) from an order and judgment sustaining the demurrer of Leora Matthews Martin (defendant below) to plaintiff's evidence and entering a judgment for the defendant.

Plaintiffs' action sought by replevin to recover possession of a house that Jim Walter Corporation, allegedly by mistake, had placed upon property belonging to the defendant, or in lieu thereof the value of the house.

Plaintiffs' evidence reflects the following circumstances. In 1960 Bobby Barnes and Barbara Barnes, husband and wife, were the owners of vacant Lots 29 and 30, Block 2, Moccasion Park Addition to the City of Sapulpa, Oklahoma. They had acquired the property from the defendant who was Barbara's mother. The lots were each 25 feet by 135 feet. In 1960 Bobby and Barbara bought a "shell" house from Jim Walter Corporation and gave that concern a promissory note and a mortgage upon Lots 29 and 30. The note and mortgage were later assigned to Mid-State Homes, Inc. By some unexplained error or mistake, the Jim Walter Corporation placed or erected the house on vacant property of the defendant described as Lots 35 and 36, Block 2, of Moccasion Park Addition, located 100 feet east of Lots 29 and 30.

Bobby and Barbara Barnes took possession of the house on Lots 35 and 36, and made some improvements on the "shell" house. The record does not reflect that Bobby and Barbara Barnes made any complaint that the house was being built on the wrong lots. The explanation for their failure to complain appears in the testimony of Barbara (plaintiffs' witness) that the builder "never did ask where the lot was, where the house was supposed to be set, in fact, I didn't know where 29 and 30 was, they just set the house where they wanted to set it."

On March 22, 1965, after a number of defaults in payment of the note and mortgage, Bobby and Barbara Barnes conveyed Lots 29 and 30 to Mid-State Homes, Inc. On the same date an Agreement for Deed was entered into between these parties whereby Mid-State agreed to re-convey Lots 29 and 30 to Bobby and Barbara Barnes upon payment of their indebtedness in accordance with an installment payment plan, with a right in Mid-State Homes to re-enter and take possession of said premises upon default in payment. Thereafter, in the summer of 1965, Mid-State Homes learned the house had been placed upon Lots 35 and 36, the property of the defendant. Mid-State Homes attempted, without success, to buy Lots 35 and 36 from the defendant.

Plaintiffs introduced the testimony of three witnesses. Their pertinent testimony, other than that showing the above circumstances, was as follows.

A surveyor testified to his examination of the recorded plat of Moccasion Park Addition and preparation of a survey showing the location of the two pairs of lots and reflecting that Lots 35 and 36 with the house thereon were located at the intersection of two streets. His examination and survey were made in May, 1966, and he said Lots 29 and 30 were wooded blackjack and that Lots 35 and 36 were cleared.

The regional manager of Mid-State Homes testified that he "came here in 1962" and had no personal knowledge of why the house was set upon the defendant's property, and that an examination of the recorded plat would have clearly disclosed the relative locations of the two pairs of lots, but that it was customary for Jim Walter Corporation to set a house at the location designated by the customer. He testified the payments stipulated in the re-purchase agreement covering Lots 29 and 30 were in default.

Barbara Barnes also testified, that she was living with her mother when the house was staked out; that neither she nor her husband told the builders where to build the house; and that she did not know where Lots 29 and 30 were located, but that her mother (the defendant) told her in 1962 that the house was on the wrong lot. She further testified that she and Bobby Barnes had separated and were divorced, probably in 1962; that she had lived in the house at all times, and had made the payments on the house until the default, and had paid for all improvements to the house, and that she was not "making any payments or rent" to the defendant.

It appears that the whereabouts of Bobby Barnes were not known. The defendant was present at the trial but was not called by plaintiffs to testify.

As stated above, the trial court sustained defendant's demurrer to plaintiffs' evidence on the ground that plaintiffs had failed to establish a cause of action, and rendered judgment for the defendant.

In her answer, and in the trial of the case and in this court, the defendant has relied upon 60 O.S.1961, § 334. The applicable portion of § 334, provides that "When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require or permit the former to remove it: * * *."

Plaintiffs concede such statutory provision, but contend that under the circumstances the statute is not applicable.

Plaintiffs rely upon our decision in Revell's Estate v. Herron, 187 Okl. 618, 105 P.2d 426, 130 A.L.R. 1029. In that case the plaintiffs sued in replevin to recover possession of a small frame house. The lower court held for the defendants and we affirmed. The plaintiffs were the owners of 40 acres of uncleared land with an old fence across the north side that was generally regarded as the common boundary line with a large tract of cultivated land to the north. The owner of the land to the north moved a small house from its location on the north tract to a point just north of the old fence, in the belief that the fence marked the south line of his property, where it remained for about four years. Plaintiffs then had a survey made and discovered the true line was north of the old fence and that the house had in fact been moved onto plaintiffs' land. A short time thereafter the defendants moved the house to the north and off of plaintiffs' land. Plaintiffs relied on § 11730, O.S.1931 (now 60 O.S.1961, § 334, supra) and contended that when the house was moved onto their land it became a part of their realty, even though placed there by mistake. We held the circumstances did not sustain this contention.

In the cited Herron case we held that in some situations an equitable right could arise in favor of an *occupant* of land, who by an honest mistake moved or built a house on land of another, which would give such *occupant* some relief from a rule of law or clear statute like or similar to our statute, supra. We said that in such cases the courts frequently found acquiescence or an implied agreement on the part of the owner of the land by joining in the act of moving or by silence and inaction for a considerable period of time. Examination of the cases cited in the Herron case reflect situations where the acquiescence or implied agreement arose by reason of an

erroneous concept as to the location of a boundary line, and in some instances by the owner of the land participating in or consenting to the building of the improvement on what later proved to be his property.

In the present case there was no common boundary line between Lots 29 and 30, and Lots 35, 36, and a casual inspection of the county records by Jim Walter Corporation would have revealed the ownership and location of the respective pairs of lots. There was no evidence that the defendant had participated in any erroneous belief as to the location of her property and the location of the property owned by the Barnes couple. The record does not reflect that defendant participated in selecting the site for the house or that she knew or had reason to know, at the time the house was being erected, that the house was being placed on her property. Defendant never recognized that plaintiffs had any right or interest in either her property or in the house.

Furthermore, plaintiffs never had the status of an occupant of defendant's property or of the house under a claim, mistakenly or otherwise, of an interest or title therein. Their interest and title was at all times limited to Lots 29 and 30.

The facts in the Herron case are different from those in the present case.

Plaintiffs also rely on Kirk v. Union Graded School District No. 1, 180 Okl. 198, 68 P.2d 769 (cited in the Herron case). The case is not in point. In that case it was conceded the building belonged to the prevailing party. This was the decisive feature in the factual situation. We held that under all of the ciricumstances the right to remove the building was included within the ownership of the building.

For the reasons herein stated the lower court did not err in sustaining the demurrer to plaintiffs' evidence.

The judgment of the trial court is affirmed.

WEST and FISHEL, JJ., concur.