FARMERS STATE BANK OF CAMERON,
Missouri, a corporation, Respondent,

v.

Eugene GARRISON, Margie Garrison, J. L.
Garrison and Gladys Garrison, d/b/a Cameron Wood Products Company, Defendants
(Not appealing),

A. K. Gibbon Lumber Company, Inc., a corporation and Allen K. Gibbon,
Appellants.

No. 23248.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

Southall & Southall, by R. J. Southall, Kansas City, for appellants.

J. B. Beavers, Cameron, for respondent.

HUNTER, Presiding Judge.

This is an appeal by defendants-appellants, A. K. Gibbon Lumber Company, Inc., a corporation and its president, Allen K. Gibbon, from a judgment of the circuit court in the sum of $549.74 resulting from a court tried case.

The evidence was conflicting in some respects and involves questions of credibility of the witnesses. As a result of our own review of it, keeping in mind that the trial court observed the witnesses as they testified and had a more advantageous position from which to resolve those questions of fact involving credibility of the witnesses, we are persuaded to accept the trial court's finding of facts on the disputed questions as the facts of the case. We proceed to set these facts out with such minor changes or additions as may assist in an understanding of the issues presented.

In the fall of 1957, appellants were endeavoring to establish a supply source for certain cottonwood lumber to be used in the manufacture of box frames. Mr. Gibbon, president of the A. K. Gibbon

Lumber Co., Inc., on behalf of himself and his company was the real promoter of this project. He contacted defendants, Eugene and J. L. Garrison, who under the name of Cameron Wood Products Company operated a small lumber and sawing business in Cameron, Missouri. In order to supply cottonwood lumber in the quantity desired by appellants, Cameron Wood Products Company needed to increase its capacity by the purchase of additional equipment and additional inventory of logs. Cameron Civic Committees offered to make ground and buildings available for the plant expansion.

Appellants realizing that the Garrisons needed capital both for machinery and logs, after some negotiations with respondent bank, entered into an agreement with it that both corporations would lend money to the Garrisons, the bank up to 80% of the value of the current inventory and the Gibbon Company up to 20% of the current inventory, with a maximum investment by the Gibbon Company to be $1,600.

In order for the Garrisons to have money for new equipment the bank agreed to lend them $8,000 to be secured by a note for $10,272.52, which included an outstanding earlier loan of $2,272.52, and a chattel mortgage covering equipment. Appellants knew all about this, and at the request of the bank appellant Gibbon Company co-signed the note, and received a copy of it and the chattel mortgage. Appellants and the bank knew this initial money was to be used for the purchase of equipment; that additional capital was needed by the Garrisons to obtain a necessary inventory of logs, and that additional financing of the Garrisons for that purpose by the bank appeared likely.

It was the bank's testimony, accepted as true by the trial court, and by us on review, that its president, Mr. Hiner, informed both Mr. Gibbon, president, and Mr. De-Laurier, treasurer of appellant Gibbon Company, that as additional loans might be made to the Garrisons the bank intended to take a chattel mortgage on all logs and lumber of the Garrisons, including that purchased with the bank's money and with the Gibbon Company's money. From time to time advancements based upon regular inventory reports furnished by the Garrisons to appellants and the bank were made both by the bank and by appellant company beginning in January, 1958, and extending into April, 1958. Altogether appellant Gibbon Company advanced the Garrisons a total of $2,320 and the bank advanced the Garrisons a total of $27,300.

On May 31, 1958, to secure the aggregate debt to it from the Garrisons for money loaned them up to that time for the mentioned purposes and unpaid, the bank took from the Garrisons a note in the sum of $21,100 secured by a chattel mortgage on logs and lumber owned by the Garrisons. This chattel mortgage was promptly recorded. On conflicting evidence, the trial court found that appellants had actual knowledge of this note and chattel mortgage, having been shown a copy of them in July, 1958.

From the very beginning, including both before and after the taking of the May 31, 1958, note and chattel mortgage, the same method of operation was used by the bank in that the Garrisons were permitted to retain possession and control of the inventory of logs and lumber and to sell at will to whomever submitted orders for the lumber. The bank had an agreement with the Garrisons that any proceeds received from such sales were to be paid over to the bank in partial payment of the Garrison's indebtedness to the bank. This was known to appellants.

Hiner testified that Gibbon, who aided the Garrisons in increasing their business by finding buyers for and arranging sales of lumber for the Garrisons and who admittedly was the broker or agent of them in such transactions, as a result of talks with the bank and with the Garrisons, was to charge the Garrisons a commission of approximately 7% on sales he arranged for

them and with the bank's permission was entitled to withhold this commission and also a sum up to 20% of the amount of any such sale to apply on the Garrisons' indebtedness to appellant Gibbon Lumber Company, Inc., and the balance was to be turned over either to the Garrisons to give to the bank or turned over to the bank directly. According to Hiner, it was all right "for him (Gibbon's) to retain his 20% as long as (the bank) got (its) 80%", and "from the beginning that is the way each transaction was managed" by Mr. Gibbon.

On September 10, 1958, the bank took another note and chattel mortgage on logs and lumber and recorded the chattel mortgage on September 13, 1958. Appellants disclaim actual knowledge of this particular instrument or of its recording.

On October 2, 1958, appellants obtained and sent an order to the Garrisons for $732 worth of lumber to be shipped to York Town Manufacturing Company. When received by appellant Gibbon, the net proceeds were applied to the outstanding indebtedness of the Garrisons to appellant Gibbon Company.

On October 23, 1958, Mr. Hiner called Mr. Gibbon and demanded payment of the net proceeds ($687.17) of this sale, advising Gibbon of the existence of the September 10, 1958, chattel mortgage purporting to cover the lumber sold. Appellants refused to pay over the net proceeds, and suit resulted.

Appellants contend the trial court erred in finding that the chattel mortgage of September 10, 1958, constituted a valid and binding lien on the lumber sold by the Garrisons to York Town Manufacturing Company on October 2, 1958, for the alleged reason it did not sufficiently describe that lumber and provided for coverage for after-acquired property never taken into possession by the mortgagor bank.

The chattel mortgage in its descriptive portion specified:
"128,573 Linear Feet of Logs described as follows:

31,000 Linear Feet of Maple Logs.
97,573 Linear Feet of Cottonwood and other Logs.
144,543 Board Feet of Lumber described as follows:
6,270 Board Feet of Maple Lumber.
138,273 Board Feet of Cottonwood and other Lumber.

"belonging to * * * us * * * and located at (the plant location) being all of the property of the above description located at said place, or which is to be purchased with the proceeds of this loan and moved to said place. * * * It is agreed that this chattel shall cover all logs and lumber purchased after this date."

According to the evidence the September 10, 1958, mortgage was based upon the currently provided inventory of the Garrisons, as were the earlier chattel mortgages. This practice of securing each new loan by a chattel mortgage on the then current inventory of the Garrisons was well known to appellant Gibbon Company, and it also referred to such inventories preliminarily to making its own loans to the Garrisons. It was the practice of the Garrisons to provide such inventories on a weekly basis to both the appellants and to respondent.

■ It is the general rule that to create a lien by chattel mortgage the property mortgaged must be identified at the time of the execution of the instrument. In general, the description should be so certain that the property mortgaged can be segregated from other similar articles. A less degree of certainty is required as between the mortgagor and mortgagee or one who stands in the same position as the mortgagor than when the rights of innocent third parties are involved. 10 Am.Jur., Chattel Mortgages, Sec. 53, p. 751, and Sec. 56, p. 753; 14 C.J.S. Chattel Mortgages § 57(2), p. 659.

We believe it to be a fair conclusion that since the chattel mortgage in describing the lumber and logs aided that description by giving their location and stating that they consisted of all the logs and lumber at that location, these appellants with the

aid of the mentioned inventory would have no real difficulty in knowing what property was intended to be covered by the mortgage. See 14 C.J.S. Chattel Mortgages § 57(2), p. 659, and (3), p. 663; Ibid, § 57(c), p. 664. We need not be concerned about the rights of uninformed third parties or bona fide purchasers for value, for appellants were the originators of the plan of the bank lending to the Garrisons for expansion purposes, and as mentioned, had personal knowledge of the general loan plan being pursued by the bank in lending money to the Garrisons and the taking a chattel mortgage on the Garrisons' then current inventory of lumber and logs. They were generally familiar with such inventories.

Appellants rely principally on the fact that the sale of lumber in question called for 8,613 Board Feet of Maple Lumber when the chattel mortgage shows a total of only 6,270 Board Feet of Maple Lumber and they contend that the sale in question must have included some after-acquired lumber. The chattel mortgage and inventory disclose that the Garrisons possessed 31,000 Linear feet of maple logs. These logs were covered by the chattel mortgage and were acquired and owned by the Garrisons for the purpose of converting them into lumber. This fact was known to appellants. There is no evidence of any additional purchases of maple lumber by the Garrisons after the September 10, 1958, mortgage. In fact, they were then in financial difficulty and apparently were in the process of quitting the business rather than obtaining additional inventory. By November, 1958, the Garrisons had abandoned their business and left the location.

■ A conversion of mortgaged logs into lumber does not of itself prevent the chattel mortgage from continuing to apply to the resultant lumber. The lumber is but the product of the logs. As stated in 14 C.J.S. Chattel Mortgages § 120, p. 728, " * * * when a mortgage is given on raw material * * * the finished product will be subject to the mortgage, even though the increase in value has been large, provided the original chattel can still be identified." In 1 Jones (Bowers Edition), Chattel Mortgages and Conditional Sales, p. 138, it is stated, "Upon the same principle a mortgage of logs intended for sawing into boards binds the lumber made out of them * * *."

It is our conclusion that as to appellants the chattel mortgage is not void for indefiniteness, and we find no merit in appellants' first contention.

Appellants next contend that the trial court erred in holding that the lien of the September 10, 1958, chattel mortgage followed the proceeds of the sale of October 2, 1958, into the hands of appellant Gibbon Company. Its stated reason is that respondent bank permitted the Garrisons to sell the lumber to anyone, conditioned only by the agreement between the mortgagor and mortgagee that the proceeds of such sales were to be applied by the mortgagor to reduce the indebtedness to the mortgagee, and that this voided or extinguished the lien and any right based upon it.

■ It is the general rule that upon a sale of the mortgaged property with the mortgagee's unconditional consent, the mortgage lien does not attach to the proceeds. The reason frequently given is that a consenting by the mortgagee to a sale of the property by the mortgagor and the passing of the title and a retention by him of the mortgage lien are wholly inconsistent positions. The mortgagee cannot in effect make the mortgagor his agent to sell the property and then when a sale is effected through such agency retain his lien notwithstanding. By consenting to such a sale and to the collection of the proceeds by the mortgagor, the mortgagee surrenders his lien and looks to the mortgagor personally for the payment of the mortgage debt. This is so even if the purchaser knew of the existence of the chattel mortgage. See Moffett Bros. & Andrews Commission Co. v. Kent, Mo.Sup., 5 S.W. 2d 395; Annotation, 36 A.L.R. 1383 II(a);

10 Am.Jur., Chattel Mortgages, Sec. 203, p. 849.

Appellants rely on this general rule as expressed in the Moffett Bros. case, supra, as controlling the outcome of this case. However, in the Moffett Bros. case the mortgagee was endeavoring to assert a lien against a bona fide purchaser for value. The court there held that if a mortgage authorizes the mortgagor to retain possession of the chattel and to sell it, he waives any lien on it as to the *purchaser*, even though the mortgagor agreed to apply the proceeds of the sale to the mortgage debt. The court stated, loc. cit. 400, "Nor is it necessary that the *vendee* of the mortgagor have knowledge of such consent * * *." (Emphasis ours.) Certainly a purchaser (vendee) should be allowed to retain the chattel sold to him by the mortgagor with the mortgagee's consent.

The facts before us are far different from those of the Moffett Bros. decision, and we do not deem it to be applicable and therefore not controlling. Appellants are not purchasers. Respondents are not seeking to recover the chattel from the possession of a purchaser, but rather to assert a lien to the proceeds as against appellants who obtained the proceeds while acting as selling agents for the mortgagor who had agreed with the mortgagee that all such money would be turned over to the mortgagee to be applied to the debt.

In 14 C.J.S. Chattel Mortgages § 205, p. 810, it is stated, "According to the great weight of authority, a mortgage is not fraudulent in law by reason of the fact that the mortgagor is left in possession of the mortgaged property with power to sell the same in the course of business in effect as agent or trustee for the mortgagee and is under the duty to account for and to pay over the proceeds in reduction of the mortgage debt. * * * (c) * * * and the proceeds of sale will, as against third persons, be regarded as applied and the debt pro tanto extinguished, although they may not in fact have been paid over to the

mortgagee. This rule, however, does not apply between the mortgagor and mortgagee."

In 10 Am.Jur., Chattel Mortgages, Sec. 159, p. 819, it is expressed: "When it is provided in the mortgage or by collateral agreement that the mortgagor shall remain in possession of the chattels and sell them, either as agent of the mortgagee or otherwise, and apply the proceeds to the payment of the mortgage debt, the mortgage is not invalid even though the mortgagor fails to make the required payments." See, also, 10 Am.Jur., Chattel Mortgages, Sec. 163, p. 823.

In 2, Bowers Edition, Chattel Mortgages and Conditional Sales, Sec. 397, in stating the position of the Missouri Courts on the general subject, it is said, loc. cit. 109: "But when by the terms of the instrument the mortgagor is not permitted to dispose of the goods for his own use but is required to apply the proceeds to the discharge of the debt secured by the mortgage, the mortgage is not void as being for the use of the mortgagor." Citing such cases as Metzner v. Graham, 57 Mo. 404; Hubbell v. Allen, 90 Mo. 574, 3 S.W. 22; Thompson v. Foerstel, 10 Mo.App. 290; Manhattan Brass Co. v. Webster Glass & Queensware Co., 37 Mo.App. 145; Forgan v. Bridges, Mo.App., 281 S.W. 134, 136; Pritchard v. Hooker, 114 Mo.App. 605, 90 S.W. 415; Liles v. Potter, Mo.App., 206 S.W. 582; Martz v. Big Horn Glass Co., Mo.App., 269 S.W. 697, 699; See, also, Hart v. Farmers' Bank, Mo.App., 28 S.W.2d 121, 124.

We have quoted liberally from the general authorities. From them we have reached the following conclusions: First, if the mortgagee permits or authorizes the mortgagor to retain possession of the chattel and to sell it for the mortgagor's benefit as by permitting the mortgagor to retain the proceeds of the sale, the mortgage lien is waived and the mortgagee may not successfully assert the lien against purchasers or creditors, even though they may have knowledge of the mortgage instrument.

And this primarily because to do otherwise would permit the mortgagee to authorize the mortgagor to sell entirely for the mortgagor's benefit and get an utterly inconsistent legal benefit for the mortgagee from the transaction to the detriment of purchasers and creditors. See Moffett Bros. & Andrews Commission Co. v. Kent, supra; Farm Bureau Co-op Mill & Supply v. Blue Star Foods, 8 Cir., 238 F.2d 326. Second, the weight of authority supports the view that the mortgagee, without waiving or losing the benefit of the lien as to unsecured creditors, may authorize or permit the mortgagor to retain possession of the chattel and sell it on condition the mortgagor account to the mortgagee for the proceeds of such sale. In such situations a purchaser for value is protected in his purchase, for the mortgagor is usually viewed as the authorized agent of the mortgagee in selling and in collecting the proceeds, even if he fails to turn them over to the mortgagee. It is noteworthy that in such circumstances the mortgagor is under a legal duty to turn the proceeds of the sale over to the mortgagee.

In line with these authorities we have concluded that as between the mortgagor (the Garrisons) and the mortgagee (the bank) the chattel mortgage was valid in every respect. Their agreement that the mortgagor could retain possession of the mortgaged chattels and sell them on condition that the proceeds of any such sale should be turned over by the mortgagor to the mortgagee to be applied to the secured debt was binding as between them, and also was binding on any agent of the mortgagor who with knowledge of the agreement procured a sale of the mortgaged chattels. Such agent, upon receiving the proceeds of the sale, has the general duty to turn the proceeds over to the mortgagor so that the mortgagor can turn the proceeds over to the mortgagee, or the agent in accordance with the agreement between the mortgagor and the mortgagee can turn them over to the mortgagee directly. The agent does not have the right to retain the proceeds of the sale for his right as agent is no greater than that of his principal, the mortgagor.

In the case before us appellants seek to assert a somewhat dual position. In selling the lumber on behalf of the Garrisons and in receiving the proceeds of that sale they designate themselves in their pleadings as a broker (agent) for the Garrisons. As the selling agent for the Garrisons it was their duty to turn the proceeds of the sale over to the Garrisons, and if they had done so respondent concedes there would be no liability on the part of appellants. However, having failed to turn the proceeds over either to the Garrisons, or, on demand, to the respondent bank, appellants seek to cast aside the fact they obtained the money as agents of the Garrisons and to rely on whatever right they might assert to the proceeds as an unsecured creditor.

The record does not disclose any misleading of the appellants to their detriment by respondent, nor any act by the respondent inconsistent with the mortgage being for the benefit of the mortgagee, nor any act by the respondent that as to appellants would be a waiver by the mortgagee of the benefits of the mortgage. Appellants either had specific knowledge of the mortgage or knowledge of facts that should have put them on notice of it.

It is our conclusion that as between respondent and appellants, respondent bank was entitled to rely on its duly recorded chattel mortgage under the related circumstances and had the right to the proceeds of the sale of the mortgaged chattels.

The trial court came to the same conclusion and after allowing the appellants credit for their selling commission and the mentioned 20% for payment on Garrisons' debt to them entered judgment for respondent for the balance. In doing so the trial court did not err.

The judgment is affirmed.

BROADDUS, J., concurs.

CROSS, J., not participating.