UNITED STATES of America, Appellee,

v.

**A. D. NEWCOMB, Appellant.**

No. 81–2028.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1982.

Decided July 15, 1982.

Woods, Aitken, Smith, Greer, Overcash & Spangler, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen., Mel Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for the State of Neb., its agencies and its officers.

Before ROSS, Circuit Judge, and STEPHENSON and HENLEY, Senior Circuit Judges.

### ORDER

Robert G. Ulrich, U. S. Atty., Linda L. Sybrant, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Roberts & Fleischaker, Ross T. Roberts, Joplin, Mo., for appellant.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

A. D. Newcomb appeals from a final judgment entered in the District Court[1] for the Western District of Missouri finding that Newcomb converted property subject to a prior perfected security interest held by the Farmers Home Administration (FmHA), an agency of the United States, and thus owed the government damages in the amount of $21,207.89, plus interest. *United States v. Newcomb,* No. 79–5006–CV–SW (W.D.Mo. Aug. 28, 1981). For reversal Newcomb argues that the district court erred in (1) applying the provisions of Article 9 of the Uniform Commercial Code (UCC), as adopted in Missouri, Mo.Ann.Stat. § 400.9–101 *et seq.* (Vernon 1965 & Supp. 1982) (all statutory references are to Mo. Ann.Stat.), instead of Missouri real estate law, and (2) finding that the description of the real estate in the security agreement and financing statement was adequate. For the reasons discussed below, we affirm the well-reasoned memorandum opinion and judgment of the district court.

The case was tried upon stipulated facts by the district court sitting without a jury. The following statement of facts is taken from the memorandum opinion of the district court.

On May 27, 1977 [Newcomb] as seller executed a "contract for deed" with Bill G. Rush, Lester and Juanita Rush (husband and wife), and Donnie and Vickie Rush (husband and wife) as purchasers of approximately 560 acres of farm real estate located in Jasper County, Missouri.... Although all purchasers signed [Newcomb's] "contract for deed," [Newcomb] never recorded that document. On or about December 6, 1979, the FmHA mailed an "Applicant Reference Letter" to [Newcomb]. In its letter the FmHA informed [Newcomb] that a loan application from Billy G. and Don J. Rush was being considered and requested [Newcomb] to share his knowledge of and experience with the applicants' financial status. [Newcomb] responded on or about December 12, 1977, stating that the Rushes owed him $284,000 for which he held 560 acres of land as security.

On May 10, 1978, Bill G. Rush together with Lester and Juanita Rush executed and delivered to [the United States], acting through the FmHA, a promissory note for the sum of $36,000 with interest at 8% per annum. In return FmHA loaned Bill, Lester and Juanita Rush $36,000. As security for that loan, Bill, Lester and Juanita Rush executed and delivered to FmHA a security agreement and financing statement. On both the security agreement and financing statement [the United States] specifically claimed a security interest in all crops then growing or thereafter to be grown on real estate described simply as 880 acres in Jasper County, Missouri, located approximately 15 miles northwest of Carthage, Missouri, owned by Lester E. and Bill G. Rush. [The United States] also claimed a security interest in "proceeds" as permitted by § 400.9–203(1)(b). [The United States] filed the financing statement signed by Bill, Lester and Juanita Rush on May 10, 1978, in the Office of the Recorder of Deeds, Jasper County, Missouri, in the filings for personal property financing statements.

On June 27, 1978, [Newcomb] notified the Rushes that he was declaring their rights under the "contract for deed" for-

[1]. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

feited for failure to make payment and demanded immediate possession of the property. On July 7, 1978, [Newcomb] filed suit against the Rushes in the Circuit Court of Jasper County, Missouri. On August 21, 1978 the court ruled that the Rushes had forfeited their rights under the "contract for deed," ordered them ejected from [Newcomb's] property, and awarded [Newcomb] damages plus costs. Thereafter [Newcomb] harvested in October of 1978 approximately 4,500 bushels of soybeans previously planted by the Rushes on land covered by the "contract for deed" with [Newcomb]. [Newcomb] realized a gross sale price of $24,542.09 from the same and a net balance after deducting costs of $21,207.89. [Newcomb] has not paid any of this amount to [the United States] in satisfaction of the promissory note in favor of [the United States] executed by Bill, Lester and Juanita Rush and secured in accordance with the security agreement and financing statement signed by those three parties.

The government filed this action in January 1979 to recover all the proceeds resulting from Newcomb's sale of the soybeans.[2] The district court found that Article 9 of the UCC, as adopted by Missouri, applied, that the government held a perfected security interest in the soybean crop and proceeds, that the government's perfected security interest superseded Newcomb's interest in the crop, and that Newcomb had converted the government's property by selling the crop and refusing to pay the government the proceeds in satisfaction of its prior perfected security interest. The

district court awarded the government damages of $21,207.89, the net balance received by Newcomb, plus interest. Newcomb appeals.

Newcomb first argues that the district court erred in applying the provisions of Article 9 of the UCC, as adopted in Missouri,[3] instead of Missouri real estate law, citing *Holdsworth v. Key*, 520 S.W.2d 637 (Mo. Ct.App.1975). Newcomb argues that the district court erroneously viewed the case as one involving conflicting Article 9 security interests. Newcomb argues that Missouri real estate law provides

> unless otherwise provided in the deed of trust, unsevered crops standing on mortgaged land at the time of a foreclosure sale are subject to the lien of the deed of trust and pass to the purchaser of the land at the foreclosure sale. The only way a growing crop can be relieved of the lien of a deed of trust is by an actual severance of the crop from the ground prior to the foreclosure sale. If it is so relieved of the lien of a deed of trust it does not pass to the purchaser at the foreclosure sale.

*Id.* at 639, *citing Farmers' Bank v. Bradley*, 315 Mo. 811, 288 S.W. 774 (1926) (banc), *and Hayden v. Burkemper*, 101 Mo. 644, 14 S.W. 767 (1890). Newcomb thus argues that under Missouri real estate law growing crops are accessories to real property which become personal property only upon actual severance from the land and that constructive severance of growing crops, whether by sale or chattel mortgage, does not affect the lien of the deed of trust.[4]

---

2. Federal jurisdiction was based on 28 U.S.C. § 1345 (United States as plaintiff).

3. Missouri has adopted the 1962 Official Text. Mo.Ann.Stat. § 400.1–101 *et seq.* (Vernon 1965 & Supp.1982). As noted by the district court, Missouri law is applicable. "[T]he relative priority of private liens and consensual liens arising from these Government lending programs is to be determined under nondiscriminatory state laws." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979) (SBA and FmHA loans).

4. As explained in *Holdsworth v. Key*, 520 S.W.2d 637, 639 (Mo.Ct.App.1975), *citing*

*Farmers' Bank v. Bradley*, 315 Mo. 811, 288 S.W. 774, 775 (1926) (banc),

> [i]n the [*Farmers' Bank*] case, the court held that the purchaser of land at a foreclosure sale received everything to which the lien of the deed of trust extended on the date of sale, and that crops standing in the field on the day of the foreclosure sale were subject to the lien of the deed of trust, notwithstanding the fact that the standing crop had been the subject of a chattel mortgage executed by the owner of the land subsequent to the execution of the deed of trust but prior to the foreclosure sale. It is said that while it was permissible to sever the ownership of the

The district court rejected this argument and applied the UCC as adopted in Missouri. We were unable to find any relevant case law on this issue but note that the commentators generally support the district court's analysis. *See* B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 8.5[1][a], at 8–47 (1980 & Supp.1981); 2 G. Gilmore, Security Interests in Personal Property § 32.4, at 865 (1965); R. Henson, Secured Transactions § 5–5, at 140–41 (2d ed. 1979); Coogan & Clovis, *The Uniform Commercial Code and Real Estate Law: Problems for Both the Real Estate Lawyer and the Chattel Security Lawyer*, 38 Ind.L.J. 535 (1963) (hereinafter Coogan & Clovis); Coogan & Mays, *Crop Financing and Article 9: A Dialogue with Particular Emphasis on the Problems of Florida Citrus Crop Financing*, 22 U.Miami L.Rev. 13 (1967) (hereinafter Coogan & Mays); Meyer, *Potential Problems Connected with the Use of "Crops" as Collateral for an Article 9 Security Interest*, 3 Agric.L.J. 115 (1981); Miller, *Farm Collateral Under the UCC: "Those Are Some Mighty Tall Silos, Ain't They Fella?"*, 2 Agric.L.J. 253 (1980) (hereinafter *Farm Collateral*); Note, *Agricultural Financing Under the UCC*, 12 Ariz.L.Rev. 391 (1970). We hold that the district court correctly applied Article 9 of the UCC as adopted in Missouri to establish the priority of the competing claims to the soybean crop and its proceeds.

The purpose and scope section of Article 9, § 400.9–102, provides that it "applies so far as concerns any personal property and fixtures within the jurisdiction of this state (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods." For the purposes of Article 9, "goods" includes growing crops. § 400.9–105(1)(f); *cf.* § 400.2–107 (including growing crops within the definition of

goods for purposes of Article 2); § 400.9–109(3) (classifying "farm products" as goods if crops or products of crops in the possession of a debtor engaged in farming operations); *Cargill, Inc. v. Hale*, 537 S.W.2d 667, 668 (Mo.Ct.App.1976) (soybean crop as goods for purposes of Article 2). Thus, Article 9 controls any transaction intended to create a security interest in growing crops. *See* Coogan & Clovis, 38 Ind.L.J. at 551–52; Coogan & Mays, 22 U.Miami L.Rev. at 30–31, 37; *Farm Collateral*, 2 Agric.L.J. at 270; Note, 12 Ariz.L.Rev. at 401.

Nor is the present transaction excluded from the scope of Article 9 by § 400.9–104(j), which provides that Article 9 does not apply "except to the extent that provision is made for fixtures in section 400.9–313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder." The underlying contract for deed in the present case is an "interest or lien in real estate" and thus excluded from Article 9 by § 400.9–104(j); however, under the UCC growing crops are by definition personal property, not real estate, and therefore any transaction intended to create a security interest in growing crops is governed by Article 9 and not subject to exclusion by the real estate transaction exception. Thus, in order to create a security interest in the soybean crop, Newcomb had to comply with the requirements of Article 9; he could not rely upon pre-UCC Missouri law holding that growing crops unsevered from the land are subject to the lien of the deed of trust. *See* 2 G. Gilmore, Security Interests in Personal Property § 32.4, at 865; R. Henson, Secured Transactions § 5–5, at 140–41; Coogan & Mays, 22 U.Miami L.Rev. at 30; *Farm Collateral*, 2 Agric.L.J. at 270; Note, 12 Ariz.L.Rev. at 401. Moreover, as noted by the district court, "§ 400.9–204(4)(a) [5]

land from the ownership of the crops standing thereon, such a severance of ownership, in and of itself, did not relieve the crops of the lien of the prior deed of trust ....

5. Mo.Ann.Stat. § 400.9–204(4)(a) provides:
No security interest attaches under an after-acquired property clause

(a) to crops which become such more than one year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage or deed of trust may if so agreed attached to crops to be

specifically permits the acquisition of a separate security interest over [future] crops in connection with a land purchase transaction. Such a provision would be unnecessary if a mortgagee or seller of real estate automatically held a lien over unsevered crops growing on the land." *United States v. Newcomb*, No. 79–5006–CV–SW, slip op. at 4.

Newcomb does not challenge the district court's findings that the security interest claimed by the government had attached under § 400.9–204 and the government had perfected the security interest by filing a financing statement, § 400.9–301, .9–302, .9–401, in May 1978. Newcomb argues that the government's security interest is unenforceable against him because the real estate description in the security agreement and financing statement was inaccurate and vague. Newcomb specifically argues that the land in question is inaccurately described as 880 acres (thus combining the 560 acres subject to Newcomb's contract for deed with another 320 acres farmed by the Rushes) "owned" by Lester and Bill Rush and imprecisely referred to as "located in Jasper County, Missouri, approximately 15 miles northwest of Carthage, Missouri." Newcomb argues that this "bare bones" description is insufficient under § 400.9–203(1)(b) and .9–402(1).[6]

The district court found that the real estate description was adequate. We cannot say that this finding is clearly erroneous. Section 400.9–110 provides that "any description of . . . real estate is sufficient whether or not it is specific if it reasonably identifies what is described." A legal metes and bounds description is not required. *Id.* (UCC comment). Here the description was sufficient to enable a third party to reasonably identify the land. *See, e.g., United States v. Big Z Warehouse*, 311 F.Supp. 283, 286 (S.D.Ga.1970) (description referring to farmer by name and to distance by miles from named town sufficient); *Bank of Danville v. Farmers National Bank*, 602 S.W.2d 160, 162–63 (Ky. 1980); *see generally* J. White & R. Summers, Uniform Commercial Code § 23–18, at 964 (2d ed. 1980); *Farm Collateral*, 2 Agric.L.J. at 271. Further, as noted by the district court, the reasonable identification standard is consistent with pre-UCC Missouri law, particularly when the adequacy of the description is challenged by a creditor with some knowledge about the land at issue. *Cf. Farmers State Bank v. Garrison*, 344 S.W.2d 323, 325 (Mo.Ct.App.1961) ("A less degree of certainty [in the description of property subject to a chattel mortgage] is required as between the mortgagor and mortgagee or one who stands in the same position as the mortgagor than when the rights of innocent third parties are involved."). Here, Newcomb as the seller of the land was certainly knowledgeable and could have reasonably identified the land from the description in the security agreement and financing statement. Moreover, Newcomb also had notice from the FmHA's Applicant Reference Letter that the FmHA was considering a loan application from the Rushes.

Accordingly, the judgment of the district court is affirmed.

---

grown on the land concerned during the period of such real estate transaction.

**6.** Mo.Ann.Stat. § 400.9–203(1)(b) (Vernon Supp.1982) provides in part that "a security interest is not enforceable against the debtor or third parties unless . . . the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops . . . , a description of the land concerned." Section 400.9–402(1) provides in part that "[w]hen the financing statement covers crops growing or to be grown . . . , the statement must also contain a description of the real estate concerned."