BARINGER, Appellant, vs. EVENSON, Respondent.

*November 17, 1905—January 30, 1906.*

*Fixtures: Landlord and tenant: Direction of verdict.*

1. In determining whether articles in a building are fixtures, three things should be considered: (1) Actual physical annexation to the realty. (2) Application or adaptation to the use or purpose to which the realty is devoted. (3) An intention on the part of the person making the annexation to make a permanent accession to the freehold.
2. In an action by a landlord against a tenant for the value of certain shelving, drawer pulls, counters, screen doors, and a furnace removed by the tenant from the demised premises, on the evidence, stated in the opinion, it is *held* that the question whether the same were fixtures should have been submitted to the jury.
3. In such case certain of the articles were attached and used in and as forming a part of the store building when the defendant became a tenant. In the absence of any evidence disclosing a different state of facts, such articles are *held* to be the property of the landlord.
4. An incoming tenant should take care to ascertain that he will have a good title to any fixtures he purchases from the outgoing tenant.

APPEAL from a judgment of the circuit court for Sauk county: E. W. HELMS, Judge. *Reversed.*

This action was brought to recover $350 damages for the conversion of certain articles which the plaintiff claims were fixtures in the building and premises described and owned by him and which had been occupied by the defendant as a drug store for many years, and which articles, the defendant claims, were not fixtures, but were personal property and belonged to him. It appears, and is undisputed, that one William H. Hopkins was the owner in fee of the building and premises described as early as 1886; that in that year he leased the store building in question to one Charles Whitman to be used by him as a drug store, etc.; that Charles Whitman continued

to occupy said building as a drug store and as the tenant of Hopkins until about September 1, 1889, when J. H. Whitman purchased said stock of drugs from Charles Whitman, and continued to occupy said building as a drug store as the tenant of Hopkins from that time until September, 1890, when the defendant herein purchased said stock of drugs from J. H. Whitman and continued such occupancy of said building as a drug store as the tenant of Hopkins under a verbal lease from that time down to April 1, 1895, when Hopkins gave to the defendant a written lease of the premises described, duly executed under their hands and seals, with the privilege of renting the rooms on the second floor for office purposes, to have and to hold the same for the term of five years from April 1, 1895, at the rate of $750 per annum, payable in instalments of $62.50 monthly in advance—to be used for the purpose of a drug store and offices; that the defendant therein agreed to pay such rent and keep the premises in good repair, and to quit and deliver up possession thereof peaceably and quietly to said Hopkins or his legal representatives at the expiration of said term in as good condition as when received, the natural wear and reasonable use thereof and destruction by the elements and fire excepted; that Hopkins or his representatives might at all times re-enter the premises for inspection and making of such alterations and changes therein as he might deem advisable; that if the lessee made any alteration in the premises without the consent of the lessor, then he was liable to be expelled therefrom forthwith; that, in case the premises should be sold during the term, then the lessor was to have the optional right to terminate and cancel the lease by giving notice thereof to the lessee, who should thereupon vacate the premises; that if the lessee should use the premises contrary to the conditions of the lease or injure the same, then the lessor or his legal representatives would be entitled to immediate possession and have the right to recover all damages sustained by the acts of the lessee, and the covenants therein

contained were thereby made mutually binding on the parties, their representatives, executors, administrators, and assigns; that that lease by its terms expired April 1, 1900; that May 4, 1901, the plaintiff purchased the premises from Hopkins and received a deed thereof from him; that the defendant without any other written lease continued to occupy the premises as such tenant under Hopkins down to the time of such purchase by the plaintiff, and from that time down to about April 1, 1904, as tenant under the plaintiff, when he removed therefrom, as alleged in the complaint, twenty glass doors, certain shelving, one hundred and ninety drawer pulls, ten panes of glass, three screen doors, one transom screen, and two sections of counters, of the alleged aggregate value of $106, and all of which the complaint alleges were in the building and attached thereto at the time the premises were so occupied by J. H. Whitman in 1890; and also that one furnace was placed in the building by the defendant and attached thereto in the usual manner by means of air ducts constructed with it and connected with the other parts of the building, and said furnace rested upon a brick foundation in the cellar of the building and built for that special purpose and no other. To the complaint alleging such facts, in effect, the defendant answered by way of admissions, denials, and counter allegations, to the effect that he was the absolute owner of the several articles mentioned, and that the same, with the exception of the furnace, had been in his continuous possession and control from September, 1890, until the time of drawing the answer, and the furnace from the time it was put into the building by the defendant in the fall of 1898. At the close of the testimony the court directed a verdict of no cause of action in favor of the defendant. From the judgment entered upon that verdict with costs, the plaintiff appeals.

For the appellant there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

*Bentley & Kelley,* for the respondent.

CASSODAY, C. J. 1. The important question presented is whether the evidence was sufficient to take the case to the jury on the question whether any of the articles mentioned were fixtures, and hence a part of the realty and the property of the plaintiff. It is conceded that all the articles mentioned, except the furnace, were in the store building when the same was occupied by the defendant's immediate predecessor, J. H. Whitman, in 1890, and continued in the store from that time down to the time they were removed by the defendant about April 1, 1904, and that the furnace was placed in the building by defendant in the fall of 1898 and remained there until it was removed by the defendant about April 1, 1904. The defendant, as an adverse witness, testified to the effect that the twenty glass doors which he removed were fastened by means of hinges and screws to the standard in front of the shelving in the room; that there were two doors to a set—ten double doors, twenty single doors; that the hinges were screwed onto the upright strip in front of a standard between the shelving, composed of boards, and attached to and supported it; that the shelving he removed was not nailed to the building proper, but was nailed to cleats, and the cleats were screwed to the building; that he did not place the shelving in the building; that it was there when he went into possession in 1890; that he removed such of the sixteen dozen drawer pulls as had not previously been destroyed; that such drawer pulls were fastened to the drawers, and each consisted of a piece of metal projecting out probably an inch from the drawer, with a place to put the hand underneath, and had an opening in front for a glass label; that those pulls were fastened to the drawers with screws and constitute a part of the fixtures, and were there when Whitman occupied; that he removed some common panes of glass which had been set in places or panels cut out of the counter for the purpose, the glass taking the place of the panels; that he left the counter, but took the glass; that he did not know whether the counter was fastened to the

building or the floor; that he removed three screen doors and a transom screen, which were fastened to the building, the same as any other ordinary screen door is attached, with regular butts; that there was a strip attached to the building, and then the door attached to the strip; that they were made expressly for the doorways; that he removed one section of counter from the building, and a prescription case, also, that had a counter attached, both of which were there before he occupied; that neither was attached to the floor in any way, but simply rested thereon; that he removed the portable furnace which he placed in the building in the fall of 1898; that the furnace had a galvanized jacket and sat on some bricks that rested on the ground; that there was one hot-air register and a square pipe went right straight up to it and lapped over onto the rim; that there was a cold-air box extending from the front of the store to the bottom of the furnace; that when the furnace was put in he had a hole cut in the floor of the building to put in the register and the cold-air duct, and cut a hole in the wall in order to let the cold-air duct through; that he removed the hot-air pipe and the cold-air duct, but not the register; that the furnace was in the basement, and the hot air was conducted through the opening in the floor of the store.

Without reference to other evidence on the part of the plaintiff, we are clearly of the opinion that the court improperly directed a verdict in favor of the defendant. The case presents two questions for consideration. One is as to the right of defendant to remove from the building the furnace which he put in the building five and one-half years prior to such removal. This court has repeatedly declared that, in determining whether articles in a building are fixtures, three things should be considered:

"(1) Actual physical annexation to the realty; (2) application or adaptation to the use or purpose to which the realty is devoted; (3) an intention on the part of the person making

the annexation to make a permanent accession to the freehold." *Taylor v. Collins,* 51 Wis. 123, 127, 8 N. W. 22; *Homestead L. Co. v. Becker,* 96 Wis. 206, 210, 71 N. W. 117; *Gunderson v. Swarthout,* 104 Wis. 186, 190, 191, 80 N. W. 465; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 86, 85 N. W. 698; *Vanasse v. Reid,* 111 Wis. 303, 87 N. W. 192; *Rinzel v. Stumpf,* 116 Wis. 287, 290, 291, 93 N. W. 36.

As stated in several of these cases, such intention is to be regarded of primary importance as between grantor and grantee, mortgagor and mortgagee. See cases cited in *Gunderson v. Swarthout,* 104 Wis. 186, 191, 80 N. W. 465; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698; *E. M. Fish Co. v. Young, post,* p. 149, 106 N. W. 795. The same is true as between the owner of the realty and the vendor of personal property who sells the same with the intention of having it permanently annexed to the freehold and it is so annexed. In addition to the cases cited above, see *Frankland v. Moulton,* 5 Wis. 1; *Cooper v. Cleghorn,* 50 Wis. 113, 122, 6 N. W. 491; *Kendall Mfg. Co. v. Rundle,* 78 Wis. 150, 47 N. W. 364. In the most recent case cited above (*Rinzel v. Stumpf,* 116 Wis. 287), the action was brought by a subcontractor to enforce a mechanic's lien for certain shelving, counters, or tables which were placed in the building by him. The shelving was of different lengths and widths and made to conform to the contour of the inside of the store, and nailed to the walls and floor so as to make the same stationary and permanent, although it could have been removed without any serious injury to the building; and it was held that such shelving was "a part of the freehold." As to the twenty-four tables furnished by such subcontractor, all but two of them were not connected nor attached to the freehold, but were loose and movable, and hence were held not to be a part of the freehold nor lienable. As to the two tables which were glued around a post in the store, it was held that they became a part of the realty and lienable. *Rinzel v. Stumpf, supra.*

The questions here presented are as to the rule between landlord and tenant. The trial court held that the defendant had such right of removal, basing his decision upon an opinion of this court written by the late Justice TAYLOR. *Second Nat. Bank v. O. E. Merrill Co.* 69 Wis. 501, 504, 34 N. W. 514, 515. The learned trial judge thought that decision was out of harmony with authorities elsewhere; and it is certainly true as to adjudications in certain jurisdictions. 1 McAdam, Landl. & T. (3d ed.) § 220, and cases there cited. But the *Merrill Case* adjudicates in respect to property, and we are constrained to follow such adjudication. The case is complicated in its facts, but, briefly stated, they are to the effect that in 1881 the Rock River Paper Company, being the owner of certain lots and water power, with a large stone building thereon known as the machine shop, with no machinery therein, and another building known as the foundry, with a very little machinery therein, leased the same to O. E. Merrill, who went into possession as tenant, and he and the O. E. Merrill Company, under such lease, placed upon said premises at their own expense all the machinery in controversy, consisting of "a boiler, engine, shafting, and various other machinery and tools," of equal or greater value than the realty so leased. October 4, 1883, the Rock River Paper Company entered into a written agreement with such tenant, reciting that during his occupancy under and by virtue of such lease he had built, constructed, erected, and put into and upon said premises such "boiler, engine, shafting, and various other machinery and tools," and it was therein agreed that the same should "be and remain the property of said" tenant; and that he should "have the right and privilege to remove or cause the same to be removed at any time during the time he" should "occupy said premises by virtue of any lease from" the Rock River Paper Company "and within a reasonable time after the expiration of any such lease," in a manner to do as little damage as possible, unless the Rock

River Paper Company or its assigns should, in the meantime, purchase the same. Such written agreement was executed by the respective parties under seal and duly witnessed and acknowledged and recorded. November 3, 1883, the Rock River Paper Company made a voluntary assignment of all its property to one Hackett for the benefit of its creditors. In pursuance of an order of the circuit court in such insolvency proceedings, the premises were sold by such assignee. to the plaintiff bank, December 30, 1884, and the amount of the purchase price credited on its claim against the Rock River Paper Company, and such sale was duly confirmed by the court. Merrill remained in possession, as such tenant, under the old lease, until February 28, 1885, when the bank gave him a new lease to expire January 1, 1886, at a rental payable monthly. November 23, 1885, Merrill, with the written consent of the bank, assigned the new lease to the Merrill Company, and the same was extended by agreement to July 1, 1886, and that company remained in possession as tenant of the bank under the new lease so extended, and thereafter and until the action was brought by the bank to restrain the Merrill Company from removing such boiler, engine, shafting, and other machinery and tools. The trial court held that the bank never became the owner of such machinery and fixtures, and that judgment was affirmed by this court. The decision of this court was based upon the intention of the parties as evinced by the evidence in the case. And so it was in effect held that as the original lease only covered the lots, buildings, and water right, and the rent reserved was clearly not based upon the value of such trade fixtures put in by the lessee, whose right to the same had been expressly sanctioned by the lessor, and in selling the premises the assignee in the insolvency proceedings did not offer for sale nor profess to sell such fixtures, and the purchaser bought with knowledge that he was to acquire no title thereto and that such fixtures were claimed by such tenant, and such claim was acquiesced

in by the silence of such purchaser, therefore the bank, as such purchaser at the bankrupt sale, got no title to such fixtures. And so it was further held, in effect, that as the new lease was taken by the tenant while in the actual possession of the premises, and "merely described the land and buildings and the water right, and did not in clear terms cover such fixtures or refer to them, . . . the acceptance of such new lease did not divest the lessee of his right" to remove such fixtures. In reaching such conclusion it is said in the opinion "that the great preponderance of the evidence in this case clearly shows that it was understood that the tenant's right to his fixtures and machinery should remain in him notwithstanding the acceptance of a new lease." And it was then said that such discussion was based upon the facts appearing in the record, and would not be conclusive if it should be shown upon the trial that the facts were different. 69 Wis. 520, 521, 34 N. W. 522. See 1 McAdam, Landl. & T. (3d ed.) § 220, pp. 746, 747. In a later case it was held by this court that:

"The tenant of land having abandoned the premises without removing a building placed thereon by him, one who afterwards purchased the building from him cannot remove it unless, by some agreement with the owner of the land, the right of removal was preserved until after possession was given up by the tenant." *Fitzgerald v. Anderson,* 81 Wis. 341, 51 N. W. 554.

In a still later case, a section foreman of a railway company, living by its permission in the section house, built a lean-to kitchen addition thereto, with the knowledge and consent of the company; and it was held that such addition became a fixture which the tenant had no right to remove after his discharge by the company and removal from the house. *Mueller v. C., M. & St. P. R. Co.* 111 Wis. 300, 87 N. W. 239.

The question whether in the case at bar the defendant had

the right to remove the furnace must depend upon the evi-
dence to be adduced upon the trial and the law applicable..
According to the defendant's testimony, mentioned, he placed
the furnace in the building in the fall of 1898 and while he
was occupying the premises under the written lease.    That
lease by its terms expired April 1, 1900.    After that, and
under our statute, he seems to have held the premises as
"a tenant from year to year upon the terms of the original
lease" (sec. 2187, Stats. 1898).    *Brown v. Kayser,* 60 Wis.
1, 18 N. W. 523; *Eimermann v. Nathan,* 116 Wis. 124, 92
N. W. 550.    Both parties state that the defendant removed.
from the building in the spring of 1904.    The precise time of
removing the furnace is not given.    From the testimony of the
defendant it would seem that the furnace was actually an-
nexed to the realty.    It seems to have been adapted to the use
or purpose to which the realty was devoted.    Whether it was
the intention of the parties that such annexation of the fur-
nace to the realty should become a permanent accession to the
freehold may be open to controversy.    Whether there was any
agreement in respect to the ownership of the furnace and the
right to remove the same does not appear.    The case was
taken from the jury and the verdict directed in favor of the
defendant.    We must hold that there were questions of fact
which should have been submitted to the jury.

2. The question whether the defendant had the right to
remove from the building any of the articles mentioned which
were in the building before the same was occupied by him in-
volves some other principles of law.    The difficulty of deter-
mining "what are fixtures that belong to the realty and what
are, as to the tenant, removable chattels," is fully recognized
by a late writer on the subject.    1 McAdam, Landl. & T. (3d
ed.) § 216.    The reason given for the difficulty is that such
fixtures "stand upon the boundary line between the two grand
division of things, real and personal, into which the law has
classified property."    Id.    Then, after stating that the law is.

more indulgent to the tenant than to the executor, the grantee, or the mortgagee, he says: "The incoming tenant should take care to ascertain that he will have a good title as against his landlord to any fixtures he purchases from the outgoing tenant." Id. In general it may be said "that what a tenant has added he may remove, if he can do so without material injury to the premises, unless he has actually built it in, so as to make it an integral part of what was there originally. But things affixed to the house in a more permanent manner, such as hearthstones, doors, and windows, he cannot, as a rule, take away, because such things are peculiarly adapted to the house in which they are fixed, and it would materially injure the freehold to take them away." Id. § 218.

Upon the facts disclosed in the record we must conclude that when the defendant became the tenant of Hopkins in 1890 he took the premises as the property of Hopkins, including the articles thereto attached or used as and forming a part of the storeroom and building, and that the written lease from Hopkins to him of April 1, 1895, ratified and confirmed such rights of property in Hopkins, and that such property and rights of property passed to the plaintiff by purchase and deed from Hopkins May 4, 1901. The covenants contained in the written lease, mentioned, by their terms bound the "respective heirs, executors, administrators, and assigns" of the parties thereto. A retrial may disclose a different state of facts. We have only attempted to indicate the principles of law applicable to the facts in the record as a guide upon a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.