**CARDWELL INVESTMENT CO., Inc., a corporation, Appellant,**

v.

**UNITED SUPPLY & MANUFACTURING CO., a corporation, Appellee.**

**No. 6082.**

United States Court of Appeals
Tenth Circuit.

July 6, 1959.

William Tinker, Wichita, Kan. (Getto McDonald, Arthur W. Skaer, Jr., Hugh P. Quinn, William Porter, Alvin D. Herrington, Darrell D. Kellogg, Wichita, Kan., Harry L. Dyer, William K. Powers, Deryl Lee Gotcher, James D. Bass, and Thomas G. Marsh, Tulsa, Okl., were with him on the brief), for appellant.

Thomas A. Landrith, Jr., Tulsa, Okl., for appellee.

Before MURRAH, PICKETT, and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The prime issue is whether there was a novation. Appellant-defendant, Cardwell Investment Company, Inc., owned two oil drilling rigs which it sold to Smith under a conditional sale contract. Smith later entered into a lease-purchase agreement with Bushager covering the rigs. While this agreement was in effect, Bushager mortgaged the rigs to appellee-plaintiff, United Supply and Manufacturing Company. Smith desired to be relieved of his obligations to Cardwell and arranged a meeting of the parties interested in the rigs. Subsequently, Cardwell sold the rigs to Bushager under a conditional sale contract. Bushager defaulted on this contract. Cardwell repossessed and sold the rigs for $100,000. The court found that the amount then due Cardwell under its conditional sale contract with Bushager was $73,808.98 and gave United, as the junior lien holder, judgment for $26,191.02, representing the difference between the sale price and the amount due Cardwell.

The basic question is whether Cardwell's rights are determined by the Smith or by the Bushager conditional sale contract. If the Smith contract controls, then at the time of the foreclosure sale there was due Cardwell $95,323.09. If the Bushager contract controls then the amount due Cardwell was $73,808.98.

as found by the court. The answer depends on whether there was a novation. Subordinate issues relate to the validity of the United mortgage and the denial by the court of Cardwell's claim for an additional sum due in the amount of $2,527.96 on account of repair parts for the rigs.

■ At all pertinent times the rigs were in Texas and all parties treat Texas law as controlling. In Texas a conditional sale contract is a mortgage.[1]

■■ A novation occurs when there is substituted for an old obligation a new obligation which extinguishes the old debt.[2] Under the Texas decisions the four essential elements of a novation are an existing valid obligation, the agreement of all the parties, the extinguishment of the old contract by the substitution of the new, and the validity of the new agreement.[3] It is not necessary that all these elements be established in writing or evidenced by express words but they may be proved as inferences from the acts and conduct of the parties and from other acts and circumstances.[4]

Two of the four elements are here conceded as no question is raised either as to the validity of the old contract, the Smith conditional sale agreement, or of the new contract, the Bushager conditional sale agreement. The inquiry is thus narrowed to whether there was agreement by all the parties and whether there was the extinguishment of the old by the substitution of the new.

While the evidence is not entirely satisfactory, it is clear that the conduct of the parties showed agreement. Bushager had possession of the rigs under his lease-purchase contract with Smith.

Smith wished to be relieved of his obligation to Cardwell, and brought Cardwell and Bushager together. Cardwell entered into the conditional sale agreement with Bushager. Thereafter, Smith did not demand and Bushager did not make any further payments under the lease-purchase contract and Cardwell did not demand and Smith did not make any further payments under the old conditional sale agreement. These circumstances reflect a consistent course of conduct based on a mutual understanding and justify the reasonable inference that the parties were in agreement.

Cardwell insists that there was no extinguishment of the old contract by the substitution of the new and points out that the Smith notes were not returned and the Smith conditional sale contract was not released of record until after repossession and sale of the rigs.[5] These factors are not of primary significance as the test is what the intent was when Bushager and Cardwell made their conditional sale contract. Such conditional sale was inconsistent with the earlier sale to Smith. The subsequent actions of Cardwell are consistent only with the extinguishment of the Smith debt and the substitution of the Bushager debt. The balance due at the time from Smith was about $80,000. Cardwell applied $20,000 received from the assignment of certain invoices by Bushager and gave to Bushager a conditional sale contract for $60,000. Thereafter Cardwell made no attempt to collect from Smith but did endeavor to collect from Bushager. Upon being advised of certain financial operations of Bushager, Cardwell immediately went to the location of the rigs, discussed the situation with Bushager, and repossessed the rigs. There is noth-

1. Vernon's Tex.Civ.Stats., Art. 5489; National Automatic Machine Co. v. Smith, Tex.Civ.App., 32 S.W.2d 678.

2. Commercial Nat. Bank of San Antonio v. Poulos, Tex.Civ.App., 8 S.W.2d 222, 224.

3. General Finance & Guaranty Co. v. Smith, Tex.Civ.App., 309 S.W.2d 531, 537, quoting from Johnson v. Harrington, Tex.Civ.App., 139 S.W.2d 202, 203.

4. Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422, 424; Commercial Nat. Bank of San Antonio v. Poulos, supra.

5. The Bushager conditional sale contract was released of record before the Smith contract was so released.

ing in the record to show that Cardwell purported to act under the Smith conditional sale contract in repossessing or selling the rigs.

■ The question of extinguishment of the old and substitution of the new goes to the intent of the parties. In the absence of an express agreement this is a question of fact to be determined as any other fact.[6] The trial court resolved the issue against Cardwell. Its findings have adequate support in the record, are not clearly erroneous, and must be upheld.[7] The amount due Cardwell was the amount due under the Bushager contract.

■ Cardwell sold the rigs for $26,191.02 more than the unpaid balance under the Bushager contract. The trial court held that United, as the junior mortgagee, was entitled to judgment for this amount. Cardwell contends that the United mortgage was a nullity because at the time it was given Bushager was a mere bailee and had no mortgageable interest in the rigs. It is not necessary to determine whether the lease-purchase agreement with Smith gave Bushager a mortgageable interest in the property because upon the execution of the conditional sale contract by him and Cardwell he obtained such an interest.[8] In Texas "the subsequent acquisition of the property feeds the mortgage."[9] A senior mortgagee owes a duty to account to a junior mortgagee for the proceeds of a sale of mortgaged property in excess of the amount necessary to pay the lien of the senior.[10]

■ The trial court refused to allow Cardwell $2,527.96 for repair parts for the rigs furnished prior to the conditional sale to Bushager. This item would have been proper if the repossession and sale had been under the Smith contract.

As there was a novation, the court properly limited Cardwell to recovery for repair parts furnished under the Bushager contract.

Affirmed.

---

6. Chastain v. Cooper & Reed, supra.

7. Rule 52(a), F.R.Civ.P., 28 U.S.C.A.; Standard Oil Co. v. Standard Oil Co., 10 Cir., 252 F.2d 65, 72.

8. Bowden v. Bank of America Nat. Trust & Savings Ass'n, 36 Cal.2d 406, 224 P.

2d 713, 717–718; 59 C.J.S. Mortgages § 75e, p. 115.

9. Ivy v. Pugh, Tex.Civ.App., 161 S.W. 939, 941.

10. 14 C.J.S. Chattel Mortgages § 386, p. 1039. Cf. Adami v. Bowers, Tex.Civ. App., 21 S.W.2d 590.