Roy M. CIRCLE and Wanda J. Circle, on behalf of themselves and others similarly situated, Plaintiffs,

v.

JIM WALTER HOMES, INC., a corporation, and Mid-State Homes, Inc., a corporation and Jim Walter Corporation, a corporation, Defendants.

Rayfield SMILEY and Evelyn C. Smiley, on behalf of themselves and others similarly situated, Plaintiffs,

v.

MID–STATE HOMES, INC., a corporation, Defendant.

Buster GARCIA and Lillian Garcia, on behalf of themselves and others similarly situated, Plaintiffs,

v.

JIM WALTER HOMES, INC., a corporation, and Mid-State Homes, Inc., a corporation and Jim Walter Corporation, a corporation, Defendants.

Nos. CIV–73–723–B, CIV–73–724–B and CIV–77–0082–B.

United States District Court, W. D. Oklahoma.

Jan. 10, 1979.

accredited actuary established the annual percentage rate of the class representative to be less than 10 percent, contrary to the figure contained in the disclosure statement.

James M. Little, John N. Goodman, Conner, Little & Conner, Oklahoma City, Okl., for plaintiffs.

Lawrence A. G. Johnson, Tulsa, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

This cause came on for trial before the court on the 5th day of June, 1978, plaintiffs appearing by counsel James M. Little and John N. Goodman of the firm of Conner, Little and Conner, Oklahoma City, Oklahoma, and defendants appearing by counsel Lawrence A. G. Johnson, Tulsa, Oklahoma. The court, having heard arguments of counsel and received and considered the briefs previously submitted, makes the following findings of fact and conclusions of law:

### Class I

On February 13, 1978, Class I was identified by court order as encompassing those individuals who purchased homes from Mid-State Homes, Inc., in transactions involving an annual percentage rate of 10 percent or less.

At pretrial, the parties stipulated that the annual percentage rate applicable to these transactions did not exceed 10 percent.

In each instance Mid-State Homes, Inc., acquired the property either through foreclosure or, upon mortgage default, through surrender by deed, whereupon the repossessed real estate was subsequently sold to class members. (Class Exhibit 1 Vols. 28 34).

The court finds that the transactions herein clearly constituted sales of interests in land involving finance charges of 10 percent or less annually. The testimony of an

### Conclusions of Law

In Oklahoma, a "consumer credit sale" is defined so as to exclude:

" . . . a sale of an interest in land if the credit service charge does not exceed ten percent (10%) per year calculated according to the Actuarial Method on the unpaid balances of the amount financed on the assumption that the debt will be paid according to the agreed terms and will not be paid before the end of the agreed term." 14A O.S. § 2–104(2)(b) (1971).

The sale of a dwelling upon real estate is not a "consumer credit sale" where, as here, the annual percentage rate does not exceed 10 percent.

The prohibition against the use of negotiable instruments is clearly limited to those transactions termed "consumer credit sales" as provided in 14A O.S. § 2–403 (1971), as follows:

"In a consumer credit sale . . . the seller . . . may not take a negotiable instrument other than a check as evidence of the obligation of the buyer . . . ."

As a matter of law there has been no "consumer credit sale" to the members of Class I, and the court concludes as a matter of law that this action should be dismissed.

### Class II

On February 13, 1978, Class II was identified by court order as being comprised of certain individuals whose property was subjected to foreclosure and judicial sale. (Class Exhibit 1, Vols. 4, 5, 9, 14, 17 and 24). The negotiable notes involved herein were all foreclosed prior to class certification.

Class II is composed of the buyers in the following transactions:

1. Nine transactions wherein Jim Walter Homes, Inc., took a negotiable promissory note wherein the finance charge paid at 11.4 percent was $13,857.78.

2. One transaction wherein the Class members assumed a pre-existing note and mortgage wherein the finance charge paid at 11.4 percent was $993.83.

3. One transaction involving a finance charge of 10 percent wherein a negotiable note was replaced with a non-negotiable note and the amount of the finance charge paid was $1,091.91.

4. Two transactions at 11.4 percent with Jim Walter Homes, Inc., wherein negotiable notes were replaced with non-negotiable notes.

5. One transaction with Mid-State Homes, Inc., where the finance charge paid was $448.69.

6. One transaction with Jim Walter Homes, Inc., at 10 percent where the finance charge paid was $658.80.

Each of these 15 transactions resulted in mortgage foreclosure and judicial sale. In each instance the amount of judgment taken was for the principal debt and earned finance charge, since each transaction balance was reduced by the unearned finance charge, under the Rule of 78. Through judgment and foreclosure, each member of Class II was judicially relieved of paying the balance of the finance charge.

Those transactions wherein the annual percentage rate was 10 percent or less each involved the sale of an interest in land. In each instance the debt arose out of a contract to construct a dwelling upon one's real property, with payment secured by a note and a mortgage upon the property.

As to those sub-classes numbered 3 and 4, supra, the court finds the negotiable notes were replaced by nonnegotiable notes wherein the tenets of negotiability were removed. These notes were taken as the individual accounts were refinanced, and the new obligations were evidenced by said nonnegotiable note.

## CONCLUSIONS OF LAW

■ In Oklahoma, an acceleration of a note by default is deemed a prepayment which entitles the maker to a rebate of the unearned finance charge under the Rule of 78. See 14A O.S. § 2–210 (1971). In the event of judgment upon a note wherein the note is merged into the judgment, the debtor is judicially relieved of the payment of the finance charge. The court finds, therefore, that through foreclosure, each member of the Class has been judicially relieved from the payment of the finance charge.

■ In those instances wherein the finance charge did not exceed 10 percent, the court finds the transaction was not one wherein there was a sale of goods, wares or merchandise, but instead involved a "sale of an interest in land." Contracts such as these, where the contractual obligation is to build a dwelling according to certain plans and specifications, are deemed "construction contracts" and are not sales of goods, wares or services. Although "sale of an interest in land" is nowhere defined in the Oklahoma UCCC, at § 226.1(ee) of Regulation Z, which has the effect of law in Oklahoma, a "real property transaction" is defined as one where the seller obtains or will obtain a security interest in land, such as is contemplated in the construction contracts with Class II members. The Oklahoma Supreme Court in *Mid-State Homes, Inc. v. Martin*, Okl.Ct.App., 465 P.2d 791 (1969) ruled that a dwelling placed upon the land of a buyer is part of the real property or land. Other courts have held under the Uniform Sales Act where one contracts to build a house according to plans and specifications, the contract is not for the sale of goods or choses in action, and the agreement to furnish labor is merely incidental to the principal purpose of the contract. *See Lekovicz v. Gobbie*, 91 Pa.Super. 33.

A sale of goods has been defined as an agreement whereby the seller transfers property or goods to the buyer, but under the Uniform Sales Act, in a case involving a contract to finish and erect a heating system for a new building, the court found a

construction contract rather than a contract of sale. The court observed:

"It would be just as proper to call a contract for the construction of a building a sale of the stone, brick, cement, wood, etc. which entered into the erection of the building . . . but whereas here the contract is really a building or construction agreement and the furnishing of materials and apparatus is merely an incident thereto, the sales act has no application. . . ." *York Heating and Ventilating v. Flannery*, 87 Pa.Super. 19.

Such reasoning has also been applied to the Uniform Consumer Code in *DeMatteo v. White*, 233 Pa.Super. 339, 336 A.2d 355 (1975), wherein a contract to construct a residence was determined to be not for the sale of goods under the UCC.

Each of the transactions here, where the defendants built a dwelling, retaining a security interest in the land, is properly identifiable as a "real property transaction" or "sale of an interest in land." The transaction is not a "consumer credit sale" under 14A O.S. § 2–104(2)(b) (1971) and the taking of a negotiable note is not a violation of 14A O.S. § 2–403 (1971) since the prohibition therein is directed to those transactions identified as "consumer credit sales."

█ In those transactions numbered 3 and 4, supra, it is clear the offending negotiable note was replaced by a nonnegotiable note, eliminating by novation or rescission the "hazard of suffering transfer to a holder in due course." *See Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 at 589 (10th Cir. 1976).

It is clear that substitution of the old negotiable note for a new obligation under a nonnegotiable note has brought about a novation. A novation occurs when there is:

1. an existing valid obligation,
2. agreement of all parties,
3. the extinguishment of the old contract by the substitution of a new contract, and
4. a valid new contract.

*See Cardwell Investment Co. v. United Supply & Manufacturing Co.*, 268 F.2d 857 (10th Cir. 1959). A subsequent contract covering fully the subject matter of a former contract operates as a rescission of and substitution for a former contract. *See Rose v. Roberts*, 195 Okl. 687, 161 P.2d 851 (1945). By statute "a contract is extinguished by its rescission." 15 O.S. § 232 (1971). A written contract may be discharged or rescinded by executing a new agreement in writing, *Gladys Belle Oil Co. v. Clark*, 147 Okl. 211, 296 P. 461 (1931), which operates as a rescission of and substitute for the former contract. *Seal v. Carroll*, Okl., 439 P.2d 185 (1968). A rescission voids a contract ab initio and the rights of the parties with reference to the subject matter of it are the same as if no contract had ever been made. *See Berland's, Inc. of Tulsa v. Northside Village Shopping Center*, Okl., 447 P.2d 768 (1968); *M & W Masonry Construction, Inc. v. Head*, Okl.App., 562 P.2d 957 (1977).

The court therefore finds that those parties who substituted new nonnegotiable notes for the prior negotiable notes have no right of action under the prior notes, which were extinguished and voided ab initio.

█ As to those transactions involving an 11.4 percent annual percentage rate, which were judicially foreclosed, it is clear that one of the issues litigated in each case was the right to recover the earned finance charge included in the foreclosure judgment. It is clear a foreclosure action bars all matters put in issue or which should have been put in issue. A foreclosure action, for example, bars a later action to quiet title and recover the land in issue, *Johnson v. Ray*, 101 Okl. 160, 222 P. 667 (1923) or the right of an easement, *Frater Oklahoma Realty Corp. v. Allen Laughon Hardware Co.*, 206 Okl. 666, 245 P.2d 1144 (1952). An action for the double penalty of usury has been barred by a foreclosure in *Sabin v. Levorsen*, 193 Okl. 320, 145 P.2d 402 (1943). At foreclosure, a determination of the correct amount due is necessarily made, including a finding as to the mortgagee's entitlement to the earned interest. *See Winn v. Prudential Co. of America*, 188 Ark. 1168, 65 S.W.2d 4 (1933).

44

*Dyer v. Hopkins*, 112 Ill. 168 (1884) held an action for usury is terminated by a decree of foreclosure, and in *Collister v. Inter-State Fidelity Building and Loan Ass'n of Utah*, 44 Ariz. 427, 38 P.2d 626 (1934), it was held the defendant was barred from maintaining a later action to recover interest, since that claim, like all matters which were in issue or which could have been in issue were conclusively settled by a foreclosure action.

Since each member of the Class has been judicially relieved by foreclosure from paying the balance of the finance charge, and since defendants' right to recover the earned finance charge has been conclusively determined, the court finds that Class II members have no right of action against the defendants herein and their action should be dismissed.

An appropriate judgment will accordingly be entered herein.

Motions to amend or alter these findings may be filed within ten (10) days of this filing date.