In re **FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE,** Plaintiff–Appellant,

v.

The **FEDERAL LAND BANK OF ST. PAUL,** Defendant–Appellee.

No. 87–1166.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1987.

Decided June 15, 1988.

William R. Steinmetz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for plaintiff-appellant.

John W. Kelley, Kelley, Weber, Pietz & Slater, S.C., Wausau, Wis., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and NOLAND, Senior District Judge.\*

NOLAND, Senior District Judge.

First Wisconsin National Bank of Milwaukee ("First Wisconsin") appeals from the district court's memorandum order affirming the decision of the bankruptcy court which awarded ownership of cranberry vines growing on certain real estate of the debtor Bear Bluff Farms to the Federal Land Bank of St. Paul ("Land Bank"). During the pendency of the bankruptcy court proceedings, the real property and the cranberry vines were sold pursuant to 11 U.S.C. § 363. Consequently, the parties' dispute is now over that portion of the proceeds from the sale which is allocable to the sale of the cranberry vines. We affirm the district court.

I.

On April 26, 1982 the debtor Bear Bluff Farms executed a promissory note in the amount of $1,991,000 as consideration for a loan from the Land Bank and gave the Land Bank a mortgage on 5,026 acres of real property purchased with the money to secure the note. The Land Bank then recorded the mortgage with the Register of Deeds for Jackson County, Wisconsin on May 4, 1982.

Bear Bluff Farms then borrowed an additional $500,000 from First Wisconsin and purchased cranberry vines for 50 acres of the new property. The First Wisconsin loan was evidenced by a Mortgage Note dated May 12, 1982 and secured by: (1) a real estate mortgage on the entire 5,026 acres, and (2) a Farm Security Agreement including *inter alia* "all cranberry vines, growing vines and cranberry produce and proceeds from the sale of said cranberry produce grown on and located on [the property]." First Wisconsin recorded its mortgage on May 26, 1982 and filed financing statements naming First Wisconsin and describing the collateral identified in the Farm Security Agreement on May 25, 1982 with the Wisconsin Secretary of State, and on May 26, 1982 with the Register of Deeds.

The Land Bank brought an action in the Jackson County Wisconsin Circuit Court to foreclose its mortgage against Bear Bluff Farms on August 30, 1983. The Land Bank named First Wisconsin as a defendant in the action and set forth in the "schedule of non-mortgagor defendants" attached to the complaint all interests claimed by First Wisconsin and the documents under which each interest was claimed. In particular, the schedule listed First Wisconsin's mortgage dated May 12, 1982 and recorded May 26, 1982 and the financing statement executed by Bear Bluff Farms filed May 26, 1982.

First Wisconsin filed an amended cross-claim and third-party complaint against all those parties whom it believed had rights junior to it. First Wisconsin did not answer the Land Bank's complaint nor did it attempt to claim any rights against the Land Bank by its third-party complaint. The Jackson Circuit Court entered a judgment of foreclosure in favor of the Land Bank on January 24, 1984 and a separate judgment of foreclosure in favor of First Wisconsin, subject to the Land Bank's

\* The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

judgment of foreclosure, on February 29, 1984.

Bear Bluff Farms filed a chapter 11 bankruptcy petition on February 19, 1985. The Land Bank filed an application for relief from the 11 U.S.C. § 362 automatic stay on September 25, 1985 for the purpose of finalizing its foreclosure proceedings pursuant to its January 24, 1984 judgment of foreclosure. First Wisconsin objected, asserting that it had a superior perfected purchase money security interest in the cranberry vines pursuant to Wis.Stat. § 409.313(4)(a).[1] The parties stipulated that the priority issue could be decided by the bankruptcy court on briefs submitted by the parties.

Applying Wisconsin law, the bankruptcy court determined that the cranberry vines had become fixtures and therefore, the Land Bank had an interest in the cranberry vines due to its mortgage filed May 4, 1982. The bankruptcy court further found that because First Wisconsin allowed a judgment of foreclosure to be entered in favor of the Land Bank on January 24, 1984 without raising the issue of any interest that First Wisconsin may have had in the cranberry vines, First Wisconsin was now estopped from attempting to assert an interest in the cranberry vines by that judgment of foreclosure. First Wisconsin appealed the bankruptcy court's decision to the district court. The district court affirmed the bankruptcy court, finding that the cranberry vines had become fixtures on the real estate and therefore, the Land Bank had an interest in the vines through its prior real estate mortgage. The district court also agreed that the Land Bank's mortgage foreclosure action which included specific references to First Wisconsin's

mortgage and financing statements gave First Wisconsin notice that the Land Bank was claiming an interest in the cranberry vines. First Wisconsin's failure to respond to the Land Bank's complaint and the subsequent judgment of foreclosure entered on behalf of the Land Bank effectively precluded First Wisconsin from asserting any interest in the cranberry vines.

## II.

When reviewing the decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. Fed.R.Bankr. 8013.[2] Review by the court of appeals of the bankruptcy judge's findings of fact is governed by the same clearly erroneous standard. *In re Pearson Brothers Co.*, 787 F.2d 1157 (7th Cir.1986) (citing *In re Kimzey*, 761 F.2d 421 (7th Cir.1985)).

First Wisconsin asserts that neither the bankruptcy court nor the district court made any findings of fact and urges us to review each issue *de novo* substituting our conclusions for those of the lower courts. This appeal raises three issues for review: first, whether the bankruptcy court erred in finding that the cranberry vines had become fixtures on the foreclosed real estate; second, if the cranberry vines had become fixtures, whether the Land Bank's mortgage gave rise to a security interest in the cranberry vines; and third, if the Land Bank did have a security interest in the cranberry vines, whether the judgment of foreclosure entered in the Land Bank's favor on January 24, 1984 estops First Wisconsin from asserting the existence of a

---

1. Wis.Stat. § 409.313(4)(a) provides:
   (4) A perfected security interest in fixtures has priority over the conflicting interest of an encumbrancer or owner of the real estate where:
   (a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within 10 days thereafter, and the debtor has an interest of record in the real estate....

2. Fed.R.Bankr. 8013 provides:
   On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

prior purchase money security interest. The resolution of the first issue required a finding of fact and will be reviewed under the clearly erroneous standard. The second and third issues present questions of law and require *de novo* review.

■ First Wisconsin first challenges the bankruptcy court's findings that the cranberry vines had become fixtures, and thus were part of the real estate. Whether personal property is attached to real property as a fixture is a question of fact. *See Baringer v. Evenson*, 127 Wis. 36, 106 N.W. 801, 804 (1906) (whether furnace placed in building by tenant was intended to become permanent accession to the freehold is a question for the jury); *Premonstratensian Fathers v. Badger Mutual Ins. Co.*, 46 Wis.2d 362, 175 N.W.2d 237 (1970) (trial court's application of three part test to determine whether coolers had become fixtures will not be set aside by reviewing court unless contrary to the great weight and clear preponderance of the evidence); *Cascade Car Wash, Inc. v. Laurent Watch Co., Inc.*, 437 F.2d 122 (9th Cir.1971) (bankruptcy referee's finding that certain buildings and structures were fixtures is a question of fact) (applying California law); *In re Factory Homes Corp.*, 333 F.Supp. 126 (W.D.Ark.1971) (trial court finds as a matter of fact that certain collateral is not a fixture, but rather equipment under U.C.C. 85-9-109(2)). We must accept the bankruptcy court's finding that the cranberry vines had become fixtures unless it is clearly erroneous.

■ Under the Uniform Commercial Code as adopted in Wisconsin, "[g]oods are 'fixtures' when they become so related to particular real estate that an interest arises in them under real estate law." Wis.Stat. § 409.313(1)(c). The Wisconsin courts have long applied a three part test to determine what constitutes a fixture:

> * * * Whether articles of personal property are fixtures, *i.e.*, real estate, is determined in this state, if not generally, by the following rules or tests: (1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted;

and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold.

*Standard Oil Co. v. LaCrosse Super Auto Service*, 217 Wis. 237, 240–41, 258 N.W. 791, 792 (1935); *Wisconsin Department of Revenue v. Smith Harvestore Products*, 72 Wis.2d 60, 67, 240 N.W.2d 357, 360 (1976); *Premonstratensian Fathers v. Badger Mutual Ins. Co.*, 46 Wis.2d 362, 175 N.W.2d 237, 239 (1970). An application of this test led the bankruptcy court to find that the cranberry vines had become fixtures. The bankruptcy court determined that the roots of the vines are embedded in the soil and thus the vines are affixed to the real estate. The cranberry vines were planted in the cranberry bog on the real estate and such application of the cranberry vines to the bog constitutes a "use or purpose to which the realty is devoted." Finally, the bankruptcy court determined that "it is the presumed intention of a hypothetical ordinary reasonable person that when a cranberry vine is planted in a cranberry bog such vine will remain a permanent accession to the real estate."

A review of the bankruptcy court's finding that the cranberry vines had become fixtures requires us to examine the application of the three-part fixture test in view of the fact that the "goods" in question, the cranberry vines, were live plants. At common law, the ancient rule was that whatever was affixed to the land in any manner was a part of the land. *Story v. Christin*, 14 Cal.2d 592, 95 P.2d 925, 926 (1939) (en banc) (citing 7 Holdsworth's History English Law, 284; 7 *Id.* 485). This general rule applied to plants and trees as well as to buildings. Once annexed to the land, the item would become a part of the land and the landowner's property. *Story*, 95 P.2d at 926. This common law rule, expressed in the maxim *"quicquid plantaur solo, solo cedit,"* forms the basis for the rule that "all growing things pass with a conveyance of the land upon which they are planted." Annotation, *Nursery Stock Attached to the Soil as Real or Personal Property and Resulting Rights*, 125 A.L. R. 1406, 1407 (1940). The common law rule

proved inequitable to the tenant farmer who would plant crops on a landlord's property during his tenancy only to have the tenancy terminate prior to harvest. An exception developed to allow such a tenant at will or for life, or other possessor of an uncertain estate, the right to enter the real estate and harvest the crops which he had planted. Only annual crops which were the "natural profit of the soil to which the tenant had contributed his labor" could be harvested. *Story*, 95 P.2d at 926 (citing Coke on Littleton § 55b).

Neither party has cited any cases which address the question of whether under the common law or statutory provision live plants could at some point become fixtures so that an interest in them in favor of the landowner would arise. Indeed, the only case which we have found which discusses the concept of live plants as a type of fixture is *Lewis v. Lewis Nursery, Inc.*, 80 N.C.App. 246, 342 S.E.2d 45 (N.C.App. 1986). In *Lewis*, a landlord brought a declaratory judgment action claiming ownership of the proceeds from the sale of strawberry plants harvested after the expiration of the tenant's lease. The tenant, a nursery, argued, *inter alia*, that the strawberry plants were trade fixtures [3] and therefore, it was entitled to remove the strawberry plants as trade fixtures even after the end of its tenancy. The court looked to the nature of the strawberry plants, noting that the plants are raised annually and harvested within a single season, and determined that they were more in the nature of crops than trade fixtures. In effect, the strawberry plants themselves were actually the end product of the tenant's business and not trade fixtures. The court contrasted the nature of the strawberry plants with the concept of a trade fixture which are items "designed to adapt the premises to the tenant's business." *Lewis*, 342 S.E.2d at 50 (citing 35 Am.Jur.2d Fixtures § 40 (1967)). The court concluded that the strawberry plants were personalty and that they were not affixed to the land so as to

become a part of it. The plants were annual yield in the nature of crops to be gathered in a single season and were not "trade fixtures" under North Carolina law. While this decision does not directly address the question of whether live vegetation can become fixtures, it is helpful to our analysis of whether cranberry vines in relation to the land upon which they grow can constitute fixtures.

Cranberries are grown commercially in Wisconsin. The cranberry vines themselves are planted in bogs by affixing clippings of the cranberry vines into the soil. As the roots develop into the soil, the clippings begin to mature into cranberry vines. The cranberry root system is not extensive and seldom reaches beyond a few inches into the soil. The planting of the cranberry vines is accomplished from late April until early June. Under ideal conditions, production of a paying crop of cranberries may occur in four years. Less favorable conditions will delay the first paying crop. The life of cranberry vines is indefinite; some cranberry vines have continued to grow in Wisconsin for about 100 years. When the flowers of the plants open in June or July, pollination occurs and the berries develop, maturing from 75 to 100 days after blossoming. As the fruit ripens it changes color from a bright green to greenish-white, then to pink and lastly to red. At harvest, the berries are dark red. *See* College of Agriculture–University of Wisconsin, *Cranberry Growing in Wisconsin*, Circular 654 (1966).

The perennial nature of the cranberry vine root system and the permanency of the cranberry vines once planted in the specially prepared bogs leads us to the determination that some interest in the cranberry vines arose under Wisconsin real estate law in favor of the landowner when the cranberry vines were so affixed to the property. Unlike the strawberry plants discussed by the court in *Lewis, supra*, which were grown by the nursery and har-

---

**3.** "Trade fixtures are items of personal property affixed to the leasehold that are necessary for or beneficial to the operation of a trade or business on the property." *Lewis v. Lewis Nursery, Inc.,*

80 N.C.App. 246, 342 S.E.2d 45, 49 (1986) (citing *Stephens v. Carter*, 246 N.C. 318, 98 S.E.2d 311 (1975).

vested annually, the nature of the cranberry vines in the present action are permanent accessions to the real estate and therefore more in the nature of fixtures than crops. While the cranberry vines do produce an annual crop of fruit, the vines themselves are not planted for the purposes of an annual harvest of cranberry vines. Rather, the cranberry grower plants the vines with a view toward future annual crops of cranberries. Under these circumstances, the cranberry vines have become fixtures within the U.C.C. definition. The bankruptcy court's analysis under the three-part fixture test yields the same result and we find that its finding is not clearly erroneous.

■ Accepting the bankruptcy court's finding that the cranberry vines had become fixtures on the real estate, the next issue to be resolved is whether the Land Bank's mortgage gave rise to a security interest in the cranberry vines. The mortgage instrument securing the indebtedness on the real estate gave the Land Bank a mortgage on the real estate including "all the tenements, hereditaments and appurtenances thereunto belonging...." The Land Bank asserts that this language would include an interest in the cranberry vines even though the cranberry vines are not specifically referenced in the mortgage instrument. First Wisconsin disagrees and argues that this language is simply too vague and generic to be sufficient to give rise to any type of interest in the cranberry vines. First Wisconsin's argument however fails to recognize the significance of the definition of fixture found in Wis.Stat. § 409.313(1)(c): goods are fixtures "when they are so related to the particular real estate that an interest arises in them under real estate law." Inherent in the factual finding that the cranberry vines had become fixtures is the determination that some interest had arisen in them under real estate law. The import of the finding that personalty has become a fixture is that it becomes part of the realty and "pass[es] by transfer of title to the land unless specifically reserved in the writing." *Hannon v. Kelly*, 156 Wis. 509, 514, 146 N.W. 512 (1914). Because the cranberry vines had become fixtures, and thus part of the realty, the mortgage held by the Land Bank gave rise to an interest in the cranberry vines in favor of the Land Bank. *See First Wisconsin Trust Co. v. Adams*, 218 Wis. 406, 261 N.W. 16, 19 (1935) (furniture, furnishings, and equipment contained in apartment building together with certain additions or alterations were covered by mortgage and therefore were part of the mortgage security).

■ Because we have determined that the finding of the bankruptcy court that the cranberry vines had become fixtures was not clearly erroneous and that the Land Bank had an interest in the cranberry vines under its mortgage, the final issue which we must consider is whether the judgment of foreclosure entered in favor of the Land Bank estops First Wisconsin from asserting a prior purchase money security interest in the cranberry vines.

Under Wisconsin law, a judgment of foreclosure and sale determines the rights of the parties in the underlying obligation and in the property. *Shuput v. Lauer*, 109 Wis.2d 164, 325 N.W.2d 321, 325 (1982) (citing Ch. 846, Stats. 1979–80). The rights of any junior lienholders are foreclosed and any realization on their interests will depend on the existence of a surplus after the sale of the property pursuant to the court judgment. *Syver v. Hahn*, 6 Wis.2d 154, 94 N.W.2d 161, 164 (1959). The entry of the judgment of foreclosure is *res judicata* in the matter. *Id.* Thus all matters put in issue during the proceedings or which should have been put in issue are barred by the judgment. *See* 59 C.J.S. Mortgages § 704 (1949); *Circle v. Jim Walter Homes, Inc.*, 470 F.Supp. 39, 43 (D.C.Okla.1979).

The judgment of foreclosure and sale entered by the Jackson County Circuit Court on January 24, 1984 in favor of the Land Bank clearly orders that:

> ... [T]he Defendants, Third–Party Defendants, and each of them and all persons claiming under them after the filing of the notice of pendency of this action, be barred and foreclosed of all interest in or to the property so sold except the

right to redeem as established by law....

The Land Bank filed its complaint seeking foreclosure of its mortgage in the Jackson County Circuit Court on August 30, 1983, naming First Wisconsin as one of thirteen defendants claiming or having an interest in the property. In paragraph 3 of its complaint, the Land Bank states that:

> ... To the extent known by the Plaintiff, the names, addresses, occupations *and basis for the claims of the said non-mortgagor defendants* in and to the real estate securing repayment of said note, are set forth in a schedule annexed hereto entitled "Schedule of Non–Mortgagor Defendants." Said schedule is incorporated herein by reference.

The "schedule of non-mortgagor defendants" incorporated into the Land Bank's complaint specifically listed First Wisconsin's mortgage dated May 12, 1982 and the financing statement executed by Bear Bluffs and filed by First Wisconsin with the Wisconsin Secretary of State on May 12, 1982. First Wisconsin did not file an answer to the Land Bank's complaint but rather filed an amended cross-claim and third-party complaint. First Wisconsin did not assert any rights against the Land Bank by its amended cross-claim and third-party complaint. The failure of First Wisconsin to assert its competing interest in the cranberry vines against the Land Bank during the pendency of the foreclosure proceedings is fatal to its attempt to establish a prior security interest in the vines. The specific references to First Wisconsin's mortgage and financing statement in the schedule incorporated into the Land Bank's complaint provided sufficient notice that the Land Bank was asserting a claim which was contrary to any security interest in the cranberry vines held by First Wisconsin. The failure to litigate that claim prior to the entry of the judgment of foreclosure in favor of the Land Bank estops First Wisconsin from now attempting to assert a prior purchase money security interest in the cranberry vines. The judgment of foreclosure in favor of the Land Bank established the rights of the Land Bank in the cranberry vines. Any interest that First Wisconsin had in the cranberry vines is now barred by the entry of the judgment of foreclosure.

We must address one further argument advanced by First Wisconsin to support its view that the Land Bank could have no interest in the cranberry vines because they could not become fixtures. First Wisconsin cites *United States v. Newcomb*, 682 F.2d 758 (8th Cir.1982) for the rule that any transaction intended to create a security interest in growing crops is governed by Article 9 of the U.C.C. and not by state real estate law. First Wisconsin argues that *Newcomb* supports its view that crops are goods which cannot become fixtures. We cannot read *Newcomb* so broadly.

In *Newcomb*, the defendant sold 560 acres of farmland to the Rush family under a contract for deed (the functional equivalent of a mortgage, *see* Wis.Stat. § 409.105(1)(j)). The Rushes then borrowed an additional $36,000 from the Farmer's Home Administration (FmHA) giving the FmHA a security interest in all crops grown on the property. The FmHA perfected its security interest by appropriate filings under Missouri law. The Rushes defaulted under the contract for deed and the defendant had them ejected from the property. Thereafter the defendant regained possession of the land and harvested and sold the soybeans planted by the Rushes. The government brought an action to recover the proceeds from the sale of the soybeans on the grounds that the FmHA's perfected security interest had priority over the defendant's interest under his deed of trust. The Eighth Circuit Court of Appeals determined that Article 9 of the U.C.C. would control transactions intending to create a security interest in growing crops and held that the district court correctly applied Article 9 in order to determine the priority of the competing interests to the soybean crop and the proceeds from its sale. *Newcomb*, 682 F.2d at 761. The issue of whether the soybean crops had become fixtures on the property was not discussed by the Eighth Circuit in reaching its decision. Moreover, the *Newcomb* courts were called on to resolve the

priority of conflicting security interests in the soybean crop. The posture of the present action never placed the issue of whether First Wisconsin's security interest would have priority over the Land Bank's interest before the lower courts for consideration. Because the lower courts never reached the issue of how the priority of conflicting security interests would be resolved, consideration of the *Newcomb* decision does not affect our decision today. The judgment of foreclosure entered on January 24, 1984 in favor of the Land Bank bars us from speculating as to what might have happened if the issue of the priority between the Land Bank's interest in the cranberry vines and any security interest held by First Wisconsin had been decided in the first instance during the original foreclosure action.

For these reasons, the judgment is AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I join in the result and in a good deal of the majority's able analysis. The majority points out the rather tenuous—practically non-existent—historical connection between the law of growing crops and the law of fixtures. I think there is little benefit at this late date in subsuming crops under the rubric of fixtures. U.C.C. section 9–313(1)(c) invites us to look to state *real estate* law—not state *fixture* law—to determine whether these vines are "fixtures" under the Code. Because state real property law distinguishes vegetable matter from fixtures, I would simply apply the common-law objective intent test here. Here the cranberry vines are not "growing crops" but are part of the real estate because there is no objective intent to harvest them. Although the vines in this case were in fact harvested, a third-party lender or other objective observer would view cranberry vines as a permanent addition to the freehold in the absence of specific evidence to the contrary. The courts below applied a slightly different test, that for fixtures; nonetheless, they correctly looked at objective mani-

festations of intent. Hence, a remand does not appear to be necessary.